**Lowell P. McKINNEY, Plaintiff,**

v.

**WATERMAN STEAMSHIP CORPORATION, Defendant.**

**Civ. A. No. 89–0100–WD.**

United States District Court, D. Massachusetts.

May 31, 1990.

Joseph M. Orlando, Orlando & Associates, Gloucester, Mass., for plaintiff.

Richard B. Kydd, Kneeland, Kydd & Handy, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER REGARDING DEFENDANT'S MOTION TO DISMISS

WOODLOCK, District Judge.

On December 12, 1981, plaintiff Lowell P. McKinney, a marine electrician, was injured on board the S.S. ROBERT E. LEE, a vessel owned by the defendant Waterman Steamship Corporation ("Waterman"). In 1984, McKinney filed a maritime tort action against Waterman in the Southern District of New York, but, in 1985, he voluntarily dismissed that action. In January of 1989, McKinney filed in this Court the instant law suit, essentially replicating his Southern District complaint. Waterman now moves for dismissal on statute of limitations/laches grounds. I will allow Waterman's motion to dismiss.

### I

Lowell P. McKinney, a New Hampshire resident, came down to the sea at Gloucester, Massachusetts, to join the crew of the S.S. ROBERT E. LEE as a marine electrician. The ROBERT E. LEE is owned by Waterman, a New York corporation.

On December 12, 1981, as the steamship was en route from the Suez Canal to Newark, New Jersey, McKinney was sent on deck in stormy weather to fix the warning lights on a cargo crane. Climbing on the wheel cowling of the crane, McKinney slipped—allegedly on accumulated oil and grease—and fell several feet onto the deck. He struck his back on the crane track and passed out. He could not work for three or four days, returned to work only on a restricted basis, and since then has suffered ongoing back problems.

The resultant maritime tort litigation has been procedurally complex. McKinney filed a complaint in the Southern District of New York on November 30, 1984. Previously, however—on December 1, 1983—

Waterman had filed a petition for reorganization in Bankruptcy Court in the Southern District, and on May 31, 1984, McKinney had filed his notice of claim in the bankruptcy proceedings.

On May 23, 1985, McKinney voluntarily dismissed his District Court complaint in the Southern District "without prejudice," apparently because of the stay of personal injury actions in effect during the bankruptcy proceedings. However, after the dismissal he continued as a claimant in the bankruptcy case, and also engaged in settlement negotiations, sending a demand letter and submitting to physical examination by a physician in the employ of Waterman.

On June 19, 1986, the Bankruptcy Court confirmed Waterman's second amended joint plan of reorganization. What happened next is somewhat in dispute.

According to Waterman, on June 19, 1986—when the Bankruptcy Court confirmed Waterman's reorganization—the Court released personal injury claimants from the automatic stay imposed by 11 U.S.C. § 362, effective in thirty days, i.e., July 19, 1986.

McKinney argues that he received no notice of the release, although he was represented by counsel and was served with copies of the Bankruptcy Court Orders. To the extent that the stay was released by operation of law, McKinney suggests that the effective date was not July 19 but rather August 9, 1986.[1]

Thus, although it is unclear at precisely what point during the summer of 1986 the stay was lifted, for the purpose of considering this motion I adopt the date suggested by McKinney and supported by the Laughlin affidavit submitted by the defendant—August 9, 1986.

Thereafter, settlement negotiations "proved fruitless" by some unspecified

---

1. McKinney had joined other personal injury claimants in seeking relief from the automatic stay. On July 24, 1986, the Bankruptcy Court both (1) denied Waterman's motion to transfer 17 personal injury/wrongful death cases to the Southern District, ruling that the motion must be brought before the District Court rather than the Bankruptcy Court; and (2) denied the claim-

ants' motions to vacate the automatic stay, but conditioned this ruling upon Waterman's refiling—in District Court—its motion to transfer within 15 days. *In re Waterman S.S. Corp.,* 63 Bankr. 435 (Bankr.S.D.N.Y.1986). Waterman did not refile its motion to transfer, so under this ruling the stay apparently lapsed on or about August 9, 1986.

date, and McKinney filed the present action in this Court during January of 1989.[2] In his three-count diversity complaint, McKinney seeks redress for his 1981 injuries (1) pursuant to the Jones Act; (2) pursuant to the general maritime law of unseaworthiness; and (3) for maintenance and cure. Waterman now moves to dismiss on the grounds that the action is time-barred.

## II

### A. Applicable Limitations Period

The parties seem to assume that the three-year limitations period provided by M.G.L. c. 260, § 2A (tort actions) applies to this diversity case. I disagree that Massachusetts limitations law governs this action, whose three counts rest on the Jones Act and general maritime law. In any event, the source of the limitations period ultimately proves immaterial because, as will appear, all potential sources suggest three years as the relevant time-frame.

■ Count I of the complaint seeks relief pursuant to the Jones Act, 46 U.S.C. Appx. § 688. "The Jones Act ... incorporates by reference the three-year limitations period contained in the Federal Employers' Liability Act (FELA), 45 U.S.C. § 56." *Clauson v. Smith*, 823 F.2d 660, 661 (1st Cir.1987). Of course, "the FELA limitation period is not totally inflexible, but, under appropriate circumstances, it may be extended beyond three years." *Burnett v. New York Central R. Co.*, 380 U.S. 424, 427, 85 S.Ct. 1050, 1054, 13 L.Ed.2d 941 (1965) (citations omitted).

■ Counts II and III are both general maritime claims (respectively unseaworthiness and maintenance & cure). Prior to 1980, when Congress enacted the Uniform Statute of Limitations for Maritime Torts, 46 U.S.C. Appx. § 763a, providing a three-year limitation period for personal injury claims arising out of maritime torts,[3] laches would have governed the timeliness of both

these counts. However, laches "has receded in importance" since the enactment of § 763a, T.J. SCHOENBAUM, ADMIRALTY & MARITIME LAW § 4–17, at 157 (Student ed. 1987):

> [b]efore Congress enacted the 3–year federal statute of limitations, the admiralty doctrine of laches, not state law, controlled the timeliness of maritime personal injury actions.... The language [of § 763a] ... suggests that Congress enacted it to deal with the problem of non-uniformity, a problem that arose because courts applying the federal doctrine of laches, would 'use [differing] local limitation statutes as a rule-of-thumb.'

*Butler v. American Trawler Co., Inc.*, 887 F.2d 20, 22 (1st Cir.1989) (citations omitted) (applying § 763a to passenger's personal injury claim). Count II plainly alleges a maritime tort arising out of a personal injury, and thus is governed by the three-year statute of limitations provided by § 763a.

■ Count III, the maintenance and cure claim, presents a closer question, because it arises out of the same personal injury as Counts I and II, yet maintenance and cure is quasi-contractual in nature. At least one court has simply disregarded the distinction and, without any particular analysis, applied § 763a to maintenance and cure as well as unseaworthiness claims, *Barber v. Atlantic Pacific Marine Corp.*, Civ. No. 87–2640, 1987 WL 18817, 1987 U.S.Dist. LEXIS 9616 (E.D.La. October 20, 1987). By contrast in *Reed v. American S.S. Co.*, 682 F.Supp. 333 (E.D.Mich.1988), Judge Freeman, in a closely reasoned opinion, held that laches rather than § 763a governs the timeliness of maintenance and cure claims. The First Circuit has not ruled on the question, although Judge Caffrey, citing *Reed*, has suggested that even in the wake of § 763a, "the doctrine of

---

**2.** McKinney claims to have filed the complaint on January 9, but the document is stamped in and docketed as having been filed on January 17.

**3.** "Unless otherwise specified by law, a suit for recovery of damages for personal injury ... arising out of a maritime tort, shall not be maintained unless commenced within three years from the date the cause of action accrued." 46 U.S.C.Appx. § 763a.

laches still applies in admiralty suits which involve claims other than tort claims and damages other than pesonal injury ... [e.g.] (maintenance and cure claim[s])." *Ciolino v. Sciortino Corp.*, 721 F.Supp. 1491, 1494 n. 2 (D.Mass.1989).

Judge Freeman was clearly correct when he noted that "[c]laims for maintenance and cure do not fall within the traditional categories of either contracts or torts." *Reed*, 682 F.Supp. at 336. Maintenance and cure is best described as a hybrid with both contract and tort qualities.

On the one hand, the source of the claim is contractual. A leading treatise observes that "[m]aintenance and cure is a *contractual form of compensation* given by the general maritime law...." M.J. NORRIS, 2 THE LAW OF SEAMEN § 26.1, at 3 (4th ed. 1985) (emphasis added). And the Supreme Court has noted that

> [i]n the United States this obligation has been recognized consistently as an implied provision in contracts of employment.... [T]he liability ... in no sense is predicated on the fault or negligence of the shipowner.

*Aguilar v. Standard Oil of New Jersey*, 318 U.S. 724, 730, 63 S.Ct. 930, 933–34, 87 L.Ed. 1107 (1943) (footnotes omitted).

But if the source of the claim is contractual, the occasion for its assertion in an action such as this is a personal injury giving rise to maritime tort litigation. It is apparent that the maintenance and cure claim in this case is simply one aspect of the collection of remedies a seaman has for a personal injury arising out of a maritime tort. It has long been recognized that "when a seaman is injured aboard ship it is prudent for his counsel to file an action against the shipowner-employer in three counts: (1) under the Jones Act, (2) under the general maritime law for unseaworthiness, and (3) under the general maritime law for maintenance and cure." Currie,

*The Silver Oar and All That: A Study of the Romero Case*, 27 U.Chi.L.Rev. 1, 3 (1959). Thus, "[a] claim for maintenance and cure—the seaman's entitlement to subsistence payments and medical treatment from his employer—is frequently appended to Jones Act and unseaworthiness claims." L. SAND et al., 4 MODERN FEDERAL JURY INSTRUCTIONS ¶ 90.01, at 90.7 (1989).

Moreover, in the context of a personal injury action, maintenance and cure is a maritime tort claim which can be expected to be asserted, if well-founded, in a timely fashion. The immediate needs of the seaman injured while engaged in maritime activities quickly rise to the surface as demands for maintenance and cure.

Judge Freeman discerned in the Congressional silence regarding the applicability of § 763a to maintenance and cure claims an affirmative legislative decision to leave maintenance and cure unaffected by the new limitations statute. *Reed*, 682 F.Supp. at 336–37. I must part company with that construction, however. The First Circuit, in *Butler v. American Trawler Co., Inc.*, answered in the affirmative the question "whether Congress intended that statute to preclude the operation of different state limitations statutes in respect to maritime torts." 887 F.2d at 21. By failing to observe the relevance of § 763a to maintenance and cure actions brought in connection with maritime torts, the *Reed* analysis runs the risk of frustrating this manifest congressional intent by proliferating the different statutes of limitations to be considered.[4] A construction more consistent with the Congressional purpose is available if the three-year limitation period of § 763a is used as a standard to determine the allocation of burdens in connection with a laches defense.

---

**4.** Norris further proliferates distinctions as to limitation periods, even within maintenance and cure claims. Thus, his treatise asserts that [m]aintenance and cure claims are not affected by the Uniform Statute of Limitations for Maritime Torts. Maintenance and cure is contractual in nature and a continuing obli-

gation. However, the failure to furnish cure is a personal injury which gives rise to a tort remedy and therefore is subject to the three-year limitation period.
M.J. NORRIS, 2 THE LAW OF SEAMEN § 26:43, at 117–18 (4th ed. 1985).

As a general proposition in admiralty, as the First Circuit noted in another context, the application of laches

> is within the 'sound discretion' of the district court.... In order for laches to apply, the district court must examine whether plaintiff's delay in bringing suit was unreasonable and whether defendant was prejudiced by the delay.... The analogous state statute of limitations ... determines where the burden of proof falls; if a plaintiff files a complaint within the analogous statutory period, the burden of proving unreasonable delay and prejudice falls on the defendant.... If a plaintiff files after the statutory period has expired, the burden shifts and a presumption of laches is created.

*Puerto Rican–American Ins. v. Benjamin Shipping*, 829 F.2d 281, 283 (1st Cir.1987) (citations omitted).

A construction consistent with the statutory intent of the federal Uniform Statute of Limitations for Maritime Torts would use the three-year limitation period of § 763a—rather than a state statute—to evaluate a laches defense when determining the timeliness of a maintenance and cure claim arising out of a maritime personal injury. By doing so, the interests of uniformity sought through § 763a are preserved while recognizing that the special qualities of the maintenance and cure claim are ultimately a matter for laches analysis.

In brief, regardless of whether Massachusetts limitations law on tort actions—as the parties erroneously assume—or federal limitations law under the Jones Act and the Uniform Statute of Limitations for Maritime Torts Act establishes the applicable limitations period, the benchmark in evaluating the limitations defense for each of McKinney's claims is three years.

**B. Three–Year Limitation Applied to McKinney's Pending Complaint**

■ Because McKinney's injury was of the sort discovered immediately, his cause of action accrued when he was injured on December 12, 1981. In the absence of any tolling provisions, the statute of limitations

would have expired on December 12, 1984, shortly after McKinney filed his complaint in the Southern District of New York. Here, however, the running of the statute of limitations was suspended on December 1, 1983, when Waterman filed for reorganization. *See* 11 U.S.C. § 362 (automatically staying commencement of actions against bankruptcy debtors).

Thus, nearly two years had passed before the clock was suspended—leaving twelve and a half months in which McKinney might commence his action after the clock began running again. Waterman argues that the clock began again on the date the stay was lifted. Taking the facts most favorable to the plaintiff, I assume that the stay was lifted on August 9, 1986, as McKinney suggests. Accordingly, on Waterman's theory, the limitations period expired sometime by late August of 1987. Since McKinney did not file the instant action until January of 1989—over sixteen months later—Waterman argues it is plainly time barred.

McKinney argues that he commenced his action within the statutory period both by filing his notice of claim in the bankruptcy proceedings in May of 1984 and by filing in November of 1984 the complaint later dismissed "without prejudice." McKinney suggests that these actions put Waterman on notice of his claim, manifested his intent to seek redress, and thus that the usual statute of limitations rationales (preventing unfair surprise to defendants and blocking plaintiffs who sleep on their rights) do not apply. He indeed suggests that the earlier filings ended, rather than suspended, the running of the limitations period.

The primary purpose of statutes of limitations is to "assure fairness to defendants," by preventing surprise and by preventing plaintiffs who have slept on their rights from trying stale claims, *Burnett*, 380 U.S. at 428, 85 S.Ct. at 1054. "It is unjust not to put the adversary on notice to defend within the period of limitation." *Id.* (citation omitted). Courts have, however, been willing to toll statutes of limitations where "a plaintiff has not slept on his rights but, rather, has been prevented from

asserting them." *Id.* at 429, 85 S.Ct. at 1055.

Here these policy rationales work against rather than for McKinney. Although McKinney in some sense put Waterman on notice within the limitations period, I cannot accept his argument that he is therefore merely "renewing" his earlier complaint. "Absent explicit conditions to the contrary—and there were none here—a voluntary dismissal under Fed.R. Civ.P. 41(a) wipes the slate clean, making any future lawsuit based on the same claim an entirely new lawsuit unrelated to the earlier (dismissed) action." *Sandstrom v. Chemlawn Corp.*, 904 F.2d 83, 86 (1st Cir. 1990) (declining to carry over jurisdictional basis of voluntarily dismissed first action to later-filed action based on the same facts and claims).

McKinney's argument would render limitations periods meaningless whenever notice alone has been timely provided by a subsequently abandoned law suit. According to this rationale, a plaintiff who provided notice of his claim within the period could then wait an indefinite time to reinitiate the prosecution of his case. Defendants could never expect repose, and courts could be burdened with cases where the memories of witnesses had long since faded and critical documents had disappeared. The result would be not to toll but rather to extinguish the statute of limitations.[5] Here, where McKinney overslept his rights after the stay was lifted, he cannot now argue that the clock should be set back.

The cases cited by McKinney lend no support to his efforts to manipulate the limitations clock. For example, in *Burnett, supra,* a timely-filed state claim was dismissed for improper venue, and the Court tolled the FELA limitation until the state court order became final, thereby allowing the plaintiff to proceed with a federal claim filed after the limitations period had run. 380 U.S. at 434–36, 85 S.Ct. at 1057–59.

The Supreme Court, however, did not toll the limitation forever based on the initiation of the earlier timely action; moreover, the earlier state action was dismissed involuntarily.

McKinney suggests that *Cumberland V.H.A. v. Inh. of Town of Cumberland,* 605 F.Supp. 269 (D.Me.1985), holds that a second complaint substantially similar to a first complaint relates back to the first action for limitations purposes. It is true that Judge Carter stated that the second "action is a 'new proceeding' only in a formal sense." *Id.* at 272. However, in *Cumberland,* the first complaint was voluntarily dismissed only after the second action was filed, and the new complaint was filed in order to allow the Farmers Home Administration to be named as a plaintiff rather than as a defendant. Judge Carter noted that the change "presumably could have been accomplished by amendment of the pleadings," *id.,* and it was for this reason that the second action was new only in a formal sense. Such circumstances bear no similarity to those at bar, where the first action was dismissed before the second was commenced—in a different judicial district more than four years later.

Similarly, the plaintiff suggests that *Maxwell v. Swain,* 833 F.2d 1177 (5th Cir. 1987), holds that where an action is commenced within the limitations period, "a defendant is put on notice of the claim." *Id.* at 1178. In *Maxwell,* however, plaintiff filed a timely Jones Act complaint, but was unable to complete service of process within the limitations period despite numerous efforts. That court's decision to allow the action to proceed is inapposite here because McKinney filed and served his original complaint, but then failed to refile within the limitations period.

A defendant cannot be expected to be a mind reader, able to discern that, having

---

5. As a limiting principle, at oral argument plaintiff's counsel suggested that the plaintiff should be permitted to refile his action at least within three years after the stay was lifted. This principle, while more contained than the indefinite period for reinitiation rationale suggested in plaintiff's brief, is still flawed. The impact of the principle would be that instead of tolling the statute of limitations, courts would be starting the clock running anew each time a tolling event occurred.

dismissed a complaint, a plaintiff will nonetheless opt to refile it at some point in the future beyond what remains of the limitations period. McKinney had twelve and a half months from the date the bankruptcy proceeding stay was vacated in which he might have timely refiled his complaint. The date of the lifting of the bankruptcy stay was no later than August 9, 1986; thus, the period of limitations had expired by the end of August, 1987. No excuse— or equitable defense, such as fraud—has been offered for the failure to refile until January, 1989, a year and a half late. The three-year statute of limitations under the Jones Act, for Count I, and under § 763a for the unseaworthiness claim, Count II, bars those claims in this action.

■ As to Count III, because the instant action was filed after the three-year limitations period expired, a presumption of laches exists and McKinney bears the burden of proving that the delay was reasonable and did not prejudice the defendant. McKinney suggests that because he commenced an identical action earlier, and submitted to physical examination by Waterman's doctor, no prejudice exists. Even assuming this to be so—and no evidence was presented that Waterman preserved a record of earlier-gathered information or that all key witnesses remain available and able to testify—McKinney failed to present any evidence that the delay was reasonable. Two and a half years elapsed between the lifting of the bankruptcy stay and filing of the instant action, yet no explanation for this lengthy delay has been offered. McKinney has failed to overcome the presumption identified by the First Circuit in *Benjamin Shipping, supra,* and Count III is barred by laches just as Counts I and II are barred by the applicable statutes of limitations.

### III

Because, as set forth more fully above, this action was not timely filed, I hereby ALLOW Waterman's motion to dismiss.