LEVIN H. CAMPBELL, Circuit Judge.
 

 Appellant Lowell McKinney appeals from the dismissal of his action for personal injury against appellee Waterman Steamship Corp. (“Waterman”) arising from an alleged accident that occurred at sea on board Waterman’s ship, the S.S. Robert E. Lee. McKinney’s complaint alleged Jones Act negligence, 46 U.S.C.App. § 688 (1982), and unseaworthiness under general maritime law; it also sought maintenance and cure benefits. In dismissing McKinney’s action, the district court held that the three-year statute of limitations barred the Jones Act and general maritime law claims, and that laches barred the maintenance and cure claim. 739 F.Supp. 678. We affirm.
 

 The district court’s discussion of this case’s extensive procedural history is comprehensive, and we need repeat only what is helpful to understand our discussion here. McKinney’s injury occurred no later than on December 12, 1981.
 
 [1]
 
 Almost two years thereafter, on December 1, 1983, Waterman petitioned for bankruptcy in the Southern District of New York under Chapter 11 of the Bankruptcy Code. The filing of this petition triggered the automatic stay provisions of 11 U.S.C. § 362. A year later, on November 30, 1984, McKinney filed a complaint for personal injury against Waterman in the District Court for the Southern District of New York. The complaint in that case was virtually identical to the present one. When Waterman’s counsel notified McKinney of the bankruptcy automatic stay, McKinney voluntarily dismissed the first complaint on May 23,1985. McKinney then filed a claim in the bankruptcy case, and his attorney engaged in settlement negotiations with Waterman representatives. The bankruptcy stay was lifted no later than August 9, 1986, and McKinney filed the present complaint in the District of Massachusetts more than two years thereafter, on January 17,1989. Not counting the time during which the bankruptcy stay prevented McKinney from suing, more than four years passed between McKinney’s injury and the filing of the present complaint.
 

 The Limitations Period
 

 The district court found, and we agree, that a three-year limitations period applies to McKinney’s tort claims. As the court stated, “the source of the limitations period ultimately proves immaterial because ... all potential sources suggest three years as the relevant time-frame.”
 
 [2]
 
 We also agree that, for tolling purposes, “[bjecause McKinney’s injury was of the sort discovered immediately, his cause of action accrued when he was injured.”
 

 The district court correctly concluded that the timeliness of the maintenance and
 
 *3
 
 cure claims depended upon equitable principles of laches, with the three-year limitations period providing a benchmark after which the bar of laches would presumptively apply unless plaintiff showed good reason to the contrary.
 
 See Clauson,
 
 823 F.2d at 661 n. 1 (laches applies to maintenance and cure claims). In
 
 Puerto Rican-American Ins. v. Benjamin Shipping,
 
 829 F.2d 281, 283 (1st Cir.1987), we noted that the district court, applying laches within its sound discretion, “must examine whether plaintiff’s delay in bringing suit was unreasonable and whether defendant was prejudiced by the delay.” 829 F.2d at 283. We further noted that if a plaintiff files a complaint within the analogous statutory period, the burden of proving unreasonable delay and prejudice falls on the defendant; thereafter, the burden shifts and laches is presumed unless disproven by plaintiff.
 
 Id.
 

 In determining the relevant analogous limitations period, the district court concluded that the federal uniform maritime tort limitations period, 46 U.S.C.App. § 763a, was applicable. The court reasoned that where, as here, the maintenance and cure claim arises out of the same personal injury as the other tort counts, even though the source of the claim is contractual, the uniform period provides the appropriate benchmark for all aspects of the injury, including maintenance and cure.
 
 Cf. Aguilar v. Standard Oil Co. of New Jersey,
 
 318 U.S. 724, 730, 63 S.Ct. 930, 933, 87 L.Ed. 1107 (1943) (maintenance and cure is an implied employment contract provision and is not predicated on fault or negligence);
 
 Butler v. American Trawler Co., Inc.,
 
 887 F.2d 20, 21 (1st Cir.1989) (Congress intended uniform maritime tort limitations period to preclude the operation of different state limitations statutes with respect to maritime torts).
 
 See generally, Barnes v. Andover Co., L.P.,
 
 900 F.2d 630, 633-37 (3d Cir.1990) (discussing history and character of maintenance and cure). The district court ruled, therefore, that the section 763a three-year statute of limitations was applicable to place the burden of proof upon McKinney to show that the delay was reasonable and did not prejudice Waterman.
 

 As the most analogous state statute of limitations period is also three years, we need not decide whether the district court properly selected the section 763a three-year limitations period as the relevant benchmark. Massachusetts law provides that a three-year limitations period applies to “actions of contract to recover for personal injuries.” Mass.Gen.Laws Ann. ch. 260, § 2A. While McKinney argues that the maintenance and cure claim is not governed by Section 763a, he concedes in his brief that a personal injury is “an obvious prerequisite of the claim” and suggests no other state law limitations reference period for purposes of allocating the burden of proof when applying laches principles. The present maintenance and cure claim, arising here out of a personal injury, fits within the Massachusetts limitations provision for a contract action to recover for personal injuries. There is no reason, therefore, to consider the applicability of the six-year Massachusetts limitations period for contract actions “other than those to recover for personal injuries.” Mass.Gen.Laws Ann. ch. 260, § 2 (1959).
 

 Application of the Limitations Period
 

 McKinney’s difficulty is that, after subtracting the full period that the automatic stay was in effect, his present suit was still not brought within three years. McKinney argues on appeal that he should receive an equitable extension of the statute of limitations and that, under the lach-es analysis relevant to his maintenance and cure claim, he did not unreasonably delay filing that claim. McKinney maintains that he did not “sleep on his rights,” that his initial filing in the Southern District of New York put Waterman on notice of the lawsuit, and that Waterman was apprised of McKinney’s continued pursuit of a remedy by means of McKinney’s involvement in ongoing settlement negotiations. The linchpin of McKinney’s arguments is his assertion that he did not receive notice that the bankruptcy stay was lifted. Consequently, he says he was unaware that he was free to refile his complaint until his
 
 *4
 
 suspicion was aroused long after the limitations period had elapsed. McKinney argues that Waterman, aware that the stay was lifted and of McKinney’s unawareness of this fact during continuing settlement negotiations, should be estopped from asserting limitations defenses.
 

 However, McKinney filed no coun-teraffidavits or other evidence in the district court supporting the contentions in his appellate brief that he was without notice of the lifting of the automatic stay. To the contrary, such evidentiary materials as there are indicate that he did receive notice and that his attorney, at least, was well aware of the progress and termination of the bankruptcy proceedings. The record appendix on appeal, designated by appellant McKinney, includes Waterman’s brief in reply to McKinney’s opposition to the motion to dismiss, to which is attached an affidavit of mailing of the notice of the confirmation of the plan, dated July 17, 1986. The page of the mailing list attached to the affidavit of mailing specifies McKinney as a recipient of notice.
 

 While the confirmation of the Chapter 11 plan on June 19, 1986 did not mention release from the automatic stay specifically, an automatic stay under 11 U.S.C. § 362(a) is normally lifted when the confirmation order is issued. Since confirmation revests the property of the estate in the debtor, (as well as discharging the debtor from all dischargeable pre-petition debts),
 
 [3]
 
 the stay of an act against the property of the estate would no longer be applicable.
 
 See In re Turning Point Lounge, Ltd.,
 
 111 B.R. 44, 46 (Bankr.W.D.N.Y.1990) (automatic stay ceases to operate upon confirmation of Chapter 11 plan);
 
 In re Korgan,
 
 52 B.R. 557 (Bankr.D.Or.1985) (automatic stay expired upon confirmation of Chapter 11 plan);
 
 In Re Paradise Valley Country Club,
 
 31 B.R. 613, 615 (D.Colo.1983) (“Since confirmation of a Chapter 11 plan has the dual effect of revesting the debtor with title to its property and discharging the debtor from all dischargeable pre-petition debts, there can be no further application of the automatic stay subsequent to confirmation”);
 
 In re Thrush,
 
 31 B.R. 106, 107 (Bankr.M.D.Pa.1983) (order granting relief from automatic stay lacked significance because six days later debtors were discharged and automatic stay was thereby lifted by operation of law).
 

 Moreover, the record appendix includes an affidavit of James P. Laughlin, (an attorney involved in representing Waterman in the bankruptcy proceedings), attached to Waterman’s motion to dismiss McKinney’s present complaint. Laughlin represents in this affidavit that Vincent Lipori, Esquire, of Carro, Spanbock, Fass, Geller, Kaster & Cuiffo, filed a proof of claim on behalf of McKinney in the bankruptcy proceedings. Laughlin also represents that McKinney appeared through counsel in the bankruptcy proceedings in connection with personal injury claimants’ efforts to obtain relief from the automatic stay. In response to the claimants’ efforts, the bankruptcy court issued an order on July 14, 1986 which purportedly would have the effect of vacating the automatic stay 15 days from the date of the order if Waterman failed to refile a 28 U.S.C. § 157(b)(5) motion to transfer personal injury/wrongful death cases to the District Court for the Southern District of New York, originally filed in the bankruptcy court. As Waterman never refiled the § 157(b)(5) motion, the automatic stay would have lapsed under the July 24, 1986 order on August 9, 1986.
 
 [4]
 

 
 *5
 
 The bankruptcy court order appears in the district court record and is also published.
 
 See In re Waterman S.S. Corp.,
 
 63 B.R. 435, 438 (Bankr.S.D.N.Y.1986). On its first page is a list of appearances, including that of Carro, Spanbock, by Vincent Lipari. It is a fair inference that all such listed counsel were notified of the bankruptcy court’s order. Notice to an attorney is notice to the client.
 
 See
 
 Fed.R.Civ.P. 5(b);
 
 Irwin v. Veterans Administration,
 
 — U.S. -, 111 S.Ct. 453, 456, 112 L.Ed.2d 435 (1990).
 

 To be sure, the present action was dismissed by the district court on a motion to dismiss on the pleadings under Fed.R. Civ.P. 12(b)(6). While under Fed.R.Civ.P. 12(c) the district court may accept matters outside the pleadings and treat the motion as one for summary judgment, in such a case Rule 12(c) provides that “all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.”
 
 See Whiting v. Maiolini,
 
 921 F.2d 5 (1st Cir.1990). There is no indication here that the parties were ever told in so many words that the court was proceeding under Rule 12(c). But this court has “treat[ed] any error in failing to give express notice as harmless when the opponent has received the affidavit and materials, has had an opportunity to respond to them, and has not controverted their accuracy.”
 
 Id., quoting Moody v. Town of Weymouth,
 
 805 F.2d 30, 31 (1st Cir.1986) (per curiam).
 
 See also Fudge v. Penthouse International, Ltd.,
 
 840 F.2d 1012, 1015 n. 1 (1st Cir.),
 
 cert. denied,
 
 488 U.S. 821, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988).
 
 But see Jones v. Automobile Insur. Co. of Hartford,
 
 917 F.2d 1528, 1532 n. 4 (11th Cir.),
 
 reh’g denied,
 
 920 F.2d 13 (1990).
 

 Here, the district court concluded, undoubtedly from the matters outside the pleadings recited above,
 
 [5]
 
 that McKinney was represented by counsel and was served with copies of the bankruptcy court orders. Waterman’s affidavit was filed on January 29, 1990, and the district court did not grant the motion to dismiss until May 31, 1990. Not only did McKinney have sufficient opportunity to file his own affidavit and fail to do so, but McKinney made no objection to consideration of Waterman’s affidavit. McKinney, in fact, designated it for inclusion in the record appendix on appeal. Moreover, while McKinney has maintained that he did not receive notice of the termination of the stay, he has not contested the accuracy of Waterman’s affidavit. We also take judicial notice of the proceedings in the bankruptcy court, and the documents filed therein, copies of which appear in the record here and whose authenticity is not disputed.
 
 D’Amario v. Butler Hospital,
 
 921 F.2d 8 n. 1 (1st Cir.1990);
 
 Kowalski v. Gagne,
 
 914 F.2d 299, 305 (1st Cir.1990) (“It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand.”);
 
 E.I. Du Pont de Nemours & Co., Inc. v. Cullen,
 
 791 F.2d 5, 7 (1st Cir.1986).
 

 
 *6
 
 Considering all the record evidence and taking judicial notice of the bankruptcy court proceedings, McKinney’s delay in refiling this action until 29 months after the bankruptcy stay was lifted — after nearly two years had already elapsed between McKinney’s injury and Waterman’s bankruptcy filing — cannot be excused. We agree with the district court that the action is time-barred.
 
 [6]
 
 Even if neither McKinney nor his counsel received notice of any specific order terminating the stay, they were well aware of the bankruptcy proceedings, they received notice of the confirmation of the plan, and they appeared in connection with the issues addressed in the court’s July 24,1986 order. Waiting to investigate the status of the stay and then filing this action nearly two and a half years later, sixteen months after the limitations period had run, is clearly a failure to exercise reasonable diligence in preserving legal rights. McKinney also argues that the voluntarily dismissed 1984 action in New York had sufficiently notified Waterman of the lawsuit within the limitations period. But that lawsuit was terminated by its dismissal. As the district court stated: “According to [McKinney’s] rationale, a plaintiff who provided notice of his claim within the period could then wait an indefinite time to reinitiate the prosecution of his case.”
 

 Likewise, McKinney’s argument that Waterman should be equitably es-topped from asserting a limitations defense is unsupported. The party asserting estop-pel has the burden of proving it.
 
 K-Mart Corp. v. Oriental Plaza, Inc.,
 
 875 F.2d 907, 912 (1st Cir.1989). McKinney alleges no action on the part of Waterman that would amount to inducing McKinney to sleep on his rights.
 
 [7]
 

 See Clauson,
 
 823 F.2d at 661 (elements of estoppel include proof that estopped party knowing facts intentionally act so as to induce ignorant party to rely on such action to his or her injury).
 

 Finally, based on the foregoing,
 
 a fortio-ri
 
 McKinney failed to carry his burden to prove both that his delay was reasonable and did not prejudice the defendant. His maintenance and cure claim is therefore barred by laches.
 
 See Benjamin Shipping, supra.
 

 Affirmed. Costs to appellees.
 

 [1]
 

 . McKinney alleges that he was injured when he fell while checking warning lights on a deck crane aboard the ship, striking his back and being knocked unconscious. McKinney asserts that the accident occurred on December 12, 1981. According to Waterman, McKinney’s initial accident report listed December 1, 1981 and his interrogatory responses listed November 21, 1981 as the date of the accident.
 

 [2]
 

 . McKinney concedes in his brief that a three-year statute of limitations governs Jones Act claims. Uniform Statute of Limitations for Maritime Torts, 46 U.S.C.App. § 763a (1982).
 
 See also Clauson v. Smith,
 
 823 F.2d 660, 661 (1st Cir.1987) ("The Jones Act ... incorporates by reference the three-year limitations period contained in the Federal Employers’ Liability Act (FELA), 45 U.S.C. § 56.”) Massachusetts law, if applicable, also provides a three-year limitations period for tort actions. Mass.Gen.L. ch. 260, § 2A (Supp.1990). A three-year limitations period is thus clearly applicable to the Jones Act and maritime unseaworthiness tort counts.
 

 [3]
 

 . While the Chapter 11 plan does not appear in the record, we presume that the personal injury claims were not discharged pre-petition debts, since Waterman does not assert otherwise.
 

 [4]
 

 . Some explanation is required for the issuance of an order pursuant to which an automatic stay was lifted, which automatic stay had already been lifted by virtue of the confirmation of a Chapter 11 plan. According to Waterman, the personal injury claimants filed various motions to lift the automatic stay at some time prior to June 7, 1986. In response to the motions to vacate the stay, Waterman moved on June 7, 1986 for the transfer pursuant to 28 U.S.C. § 157(b)(5). Pursuant to 11 U.S.C. § 362(e), 30 days from the request to lift the stay, the stay is terminated with respect to the party making the request unless the Court, after notice and a hearing, orders the stay continued. Thus, once that period elapsed, no later than 30 days from June 7, 1986, (in other words, July 7, 1986) the stay here would have been lifted pursuant to 11 U.S.C. § 362(e), but for the lifting of the stay
 
 *5
 
 prior to that time upon confirmation of the plan on June 19, 1986.
 

 Notwithstanding these two legal mechanisms whereby the stay would have been lifted under the Bankruptcy Code prior to July 24, 1986, however, the bankruptcy court entered an additional order denying the personal injury claimants’ motions to lift the stay conditional upon Waterman’s refiling in the appropriate forum the § 157(b)(5) motion to transfer. Possibly, the bankruptcy judge felt that he was compelled to rule on the motions to vacate and the motion to transfer, which had been filed prior to the June 19, 1986 confirmation order, perhaps forgetting that the confirmation of the plan had already disposed of the automatic stay.
 
 See In re Thrush,
 
 31 B.R. 106, 107,
 
 supra
 
 (bankruptcy court, in granting motion to vacate automatic stay, was unaware of status of entire bankruptcy proceeding and therefore entered order granting motion that was without significance).
 

 In any event, we need not decide precisely when the automatic stay was lifted. Suffice it to say that the stay was lifted no later than August 9, 1986, and that, as discussed below, McKinney and his counsel should have been aware that they were entitled to proceed with their personal injury claims after that date.
 

 [5]
 

 .
 
 See Republic Steel Corp. v. Pennsylvania Engineering Corp.,
 
 785 F.2d 174, 178 (7th Cir.1986) (both parties had reasonable opportunity to— and did in fact — present materials pertinent to Rule 56 proceeding; district court could have treated motion as one for summary judgment and it was equally proper for court of appeals to do so, considering the record on appeal to include undisputed statements of fact appearing in submitted affidavits).
 

 [6]
 

 .
 
 See Irwin,
 
 111 S.Ct. at 457-58 ("Federal courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary’s misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.” (footnotes omitted)).
 

 [7]
 

 . McKinney argues that settlement negotiations continued during the pendency of the bankruptcy stay, that he submitted to a medical examination, and that Waterman had contact with McKinney’s counsel after the stay was lifted. McKinney, however, fails to point to any specific evidence that Waterman continued such negotiations after the lifting of the stay, much less sought to induce McKinney into sleeping on his rights.