**Peter Robert SKYWARK, Plaintiff,**

v.

**Henry ISAACSON, Esq., and Isaacson, Schiowitz, Korson & Solny, Defendants.**

**No. 96 Civ. 2815 (JFK).**

United States District Court, S.D. New York.

Nov. 19, 1996.

Curtis & Riess–Curtis, P.C. (Cheryl Riess–Curtis, of counsel), New York City, for plaintiff.

Profeta & Eisenstein (Fred R. Profeta, Jr., of counsel), New York City, for defendants.

## OPINION AND ORDER

KEENAN, District Judge.

Before the Court is Defendants' motion, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, for an order granting summary judgment in this legal malpractice action. For the reasons set forth below, Defendants' motion is denied.

### Background

This legal malpractice action centers around this Court's dismissal, and the Second Circuit's affirmance, of Plaintiff's personal injury action on the grounds that it was time-barred. Plaintiff has invoked this Court's diversity jurisdiction.

In 1986, Plaintiff was employed by United States Lines and alleges that on August 14 he was seriously injured when struck in the head by a piece of equipment. He was serving at that time on the S.S. American Georgia, a vessel owned by United States Lines, Inc.

On November 24, 1986 United States Lines, Inc. and United States Lines (S.A.) Inc. filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. These petitions were filed in the United States Bankruptcy Court for the Southern District of New York. On the same day, the Bankruptcy Court entered a restraining order prohibiting commencement or continuation of suit on all pre-petition causes of action against Debtors. An automatic stay of actions also commenced by operation of law. By this time Plaintiff had not filed any action based on the August 14, 1986 incident, and the stay and restraining order prevented him from doing so. However, the Plaintiff filed a proof of claim in the bankruptcy proceeding on May 14, 1987.

The bankruptcy proceeding resulted in a reorganization. On August 6, 1992, the Bankruptcy Court entered an order terminating the automatic stay and restraining order. Plaintiff's attorneys received notice of the termination on August 17, 1992. The effect was to allow Plaintiff to commence a lawsuit based upon his personal injury claim. Plaintiff's attorneys filed a complaint in this Court on November 12, 1992, stating a claim of negligence under the Jones Act and a claim of unseaworthiness under the General Maritime Law.

Defendants United States Lines, Inc., and United States Lines (S.A.) Inc. Reorganization Trust moved for summary judgment dismissing the complaint on the ground that it was barred by the statute of limitations. Chief Judge Thomas P. Griesa granted the motion. *Skywark v. United States Lines, Inc.*, 1994 WL 494864 (S.D.N.Y. Sept. 9, 1994). The normal limitation period for Plaintiff's negligence and unseaworthiness claims was three years. The three-year period expired on August 13, 1989. However, Judge Griesa found that "the automatic stay and restraining order in the bankruptcy proceeding intervened and prevented any suit by Plaintiff from November 24, 1986 until August 6, 1992." *Id.* at *1. Judge Griesa then quoted § 108(c) of the Bankruptcy Code entitled "Extension of Time," which provides:

... [I]f applicable nonbankruptcy law ... fixes a period for commencing or continuing a civil action in a court other than a

bankruptcy court on a claim against the debtor ... and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 30 days after notice of the termination or expiration of the stay ... with respect to such claim.

*Id.* (quoting 11 U.S.C. § 108(c)). Judge Griesa concluded that "a plaintiff may bring a civil action against a debtor within the regular limitation period or up to 30 days after notice of the termination of the bankruptcy stay, whichever is later." *Id.* As the regular limitation period had expired before the termination of the bankruptcy stay, Plaintiff Skywark had until 30 days after notice of the termination to commence a civil action. Judge Griesa found that Plaintiff thus had until 30 days after August 17, 1992, or until September 16, 1992 in which to file suit. Because Plaintiff did not file until November 12, 1992, Judge Griesa held that the plain language of 11 U.S.C. § 108(c) time-barred Plaintiff's suit. *Id.* at *2 (citing *Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067 (2d Cir.1993)).

Plaintiff appealed Judge Griesa's ruling to the Second Circuit. Plaintiff argued that his claims were not time-barred because maritime law provides for tolling of the limitations period where an automatic stay prevents plaintiff from bringing suit, and this non-bankruptcy tolling rule is incorporated by reference into the extension of time provision of the bankruptcy code. The Circuit rejected Plaintiff's argument, applying its reasoning in *Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1074–75 (2d Cir. 1993), that maritime law "does not provide for tolling during pendency of bankruptcy, because 'in the bankruptcy arena ... plaintiffs have advance knowledge of when claims are to expire and may act to protect themselves,'" *Skywark v. United States Lines, Inc.*, No. 94–9027, op. at 3, 57 F.3d 1064 (2d Cir. May 22, 1995 (quoting *Aslanidis*, 7 F.3d at 1074)), *cert. denied,* — U.S. ——, 116 S.Ct. 337, 133 L.Ed.2d 236 (1995). The Cir-

cuit found that before the stay is lifted plaintiff is aware he has a cause of action against the defendant, because he would previously have filed a proof of service of claim in the Bankruptcy Court, and he has at least 30 days in which to file after receiving notice that the stay has been lifted.

Plaintiff subsequently filed the instant legal malpractice action against Defendants, Henry Isaacson, Esq. and Isaacson, Schiowitz, Korson & Solny, who represented Plaintiff in his personal injury action. Plaintiff alleges that Defendants breached their duty to exercise reasonable care in providing Plaintiff with competent legal representation by not seeking to lift the automatic stay so that Plaintiff's claims could be prosecuted, and by failing to timely file Plaintiff's complaint.

Defendants now move for summary judgment, claiming that their conduct was reasonable, that attorneys may not be liable for "honest mistakes of judgment," and that at the time the personal injury action was commenced, all of the relevant case law indicated that the statute of limitations had not expired. On October 31, 1996, this Court heard oral argument on the instant motion.

### Discussion

**A. Legal Standards**

A motion for summary judgment may be granted under Fed.R.Civ.Pro. 56 if the entire record demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). When viewing the evidence the Court must "assess the record in the light most favorable to the non-movant and ... draw all reasonable inferences in its favor." *Delaware & Hudson Railway Co. v. Consolidated Rail Corp.,* 902 F.2d 174, 177 (2d Cir.1990).

In this diversity case, the substantive law of New York governs as to attorney liability. An attorney is liable for malpractice if it can be proved that his conduct fell below the ordinary and reasonable skill and knowledge commonly possessed by a mem-

ber of the profession. *Grago v. Robertson,* 49 A.D.2d 645, 370 N.Y.S.2d 255, 258 (3d Dept.1975). However, an attorney "is not liable for an honest mistake of judgment, where the proper course is open to reasonable doubt." *Bernstein v. Oppenheim & Co.,* 160 A.D.2d 428, 554 N.Y.S.2d 487, 489 (1st Dept.1990). Thus, "selection of one among several reasonable courses of action does not constitute malpractice." *Rosner v. Paley,* 65 N.Y.2d 736, 492 N.Y.S.2d 13, 14, 481 N.E.2d 553, 554 (1985). While the question of whether the courses of conduct open to the attorney were "reasonable" may be answered by the Court as a matter of law, "[a]bsent such 'reasonable' courses of conduct found as a matter of law, a determination that a course of conduct constitutes malpractice requires findings of fact." *Bernstein,* 554 N.Y.S.2d at 489. Thus, if this Court finds that Defendants took a reasonable course of action, the question is a matter of law and summary judgment may be granted. However, if this Court does not find that Defendants' course of conduct was reasonable, the question of whether Defendants are liable for malpractice goes to the trier of fact and summary judgment is precluded.

### B. The "Reasonableness" of Defendants' Course of Conduct

■ In support of their summary judgment motion, Defendants argue that they cannot be found liable because, at worst, they made an "honest mistake of judgment" and they took a reasonable course of conduct under the circumstances. At the time the bankruptcy stay was lifted, Defendants allege that "all appellate authority held that the statute of limitations was tolled during the pendency of a bankruptcy stay." Def. Mem. in Supp., at 5, 7–9 (citing *Garbe Iron Works, Inc. v. Priester,* 99 Ill.2d 84, 75 Ill. Dec. 428, 457 N.E.2d 422 (1983); *Major Lumber v. G & B Remodeling,* 817 S.W.2d 474 (Mo.Ct.App.1991); *In re Hunters Run, Ltd. Partnership,* 875 F.2d 1425 (9th Cir. 1989)). Defendants also cited numerous lower court cases holding the same. *Id.* at 9 (citing *In re Chemisphere Partners,* 90 B.R. 380, 382 (Bankr.N.D.Ill.1988); *In re Coan,* 96 B.R. 828, 832 (Bankr.N.D.Ill.1989); *In re Design Builders,* 18 B.R. 392, 394–95

(Bankr.D.Idaho 1981); *In re Houts,* 23 B.R. 705, 707 (Bankr.W.D.Mo.1982); *In re New England Carpet Co.,* 26 B.R. 934, 939 (Bankr. D.Vt.1983); *In re Victoria Grain Co.,* 45 B.R. 2, 6 (Bankr.D.Minn.1984); *Wells v. California Tomato Juice, Inc.,* 47 Cal.App.2d 634, 118 P.2d 916, 918–19 (1941)).

Defendants contend that where courts used the word "toll" with regard to statutes of limitations, they reasonably viewed "toll" to mean that the statute of limitations stopped when the stay was imposed and began running again upon termination of the stay. Defs. Reply Mem. in Supp., at 7. Further, Defendants argue that the First Circuit Court of Appeals, the only appellate court to have spoken on the issue in the context of a Jones Act proceeding, ruled as Defendants wish the Second Circuit had in *Aslanidis.* Defendants point to *McKinney v. Waterman Steamship Corp.,* 739 F.Supp. 678 (D.Mass. 1990), *aff'd,* 925 F.2d 1 (1st Cir.1991), where the District Court, affirmed by the Circuit, stated:

> Here, however, the running of the statute of limitations was suspended on December 1, 1983, when Waterman [Steamship Corporation] filed for reorganization. See 11 U.S.C. § 362 (automatically staying commencement of actions against bankruptcy debtors).
>
> Thus, nearly two years had passed before the clock was suspended—leaving twelve and a half months in which McKinney might commence his action after the clock began running again.

739 F.Supp. at 682. Consequently, Defendants argue, they acted reasonably in filing Plaintiff's claim after § 108(c)'s 30 day period, but within the time left on the three year limitation period that they believed stopped running when the bankruptcy was filed.

Defendants assert that the Second Circuit's *Aslanidis* decision, upon which Judge Griesa and the Circuit relied in finding Plaintiff's claim time-barred, came down more than ten months after the Defendants commenced Plaintiff's personal injury action, whereas *McKinney* preceded the filing in this case. *Aslanidis* affirmed an October 16, 1992 dismissal order by this Court, which

was thus not available for inspection by the Defendants until 41 days after the 30–day period of § 108(c)(2) had expired. Defendants further contend that *Aslanidis* was the first appellate decision holding that a toll does not automatically arise during the pendency of a bankruptcy stay. Defendants thus argue their conduct was reasonable, given the state of the law at the time, and they cannot be held liable for failing to foresee a split in authority on the issue.

Plaintiff opposes Defendants' summary judgment motion on the grounds that Defendants undertook an unreasonable course of action. Plaintiff cited cases to demonstrate that at the time the bankruptcy stay was lifted, contrary to Defendants' assertions, the state of the law was unsettled as to the tolling effect of § 108(c). Because of this unsettled state of the law, Plaintiff contends that Defendants acted unreasonably in choosing a course of conduct, i.e. not filing the complaint within 30 days after receiving notice that the stay was lifted, that "so manifestly risked the loss of his client's claims." Pls.Mem. in Opp., at 18.

Plaintiff has offered sufficient evidence to demonstrate to the Court that the case law was unsettled at the time the stay was lifted. Upon an examination of the cases cited by Plaintiff and Defendants, and through the Court's own research into the law as it existed in 1992, it is clear that there was a divergence of authority as to the "tolling" effect of § 108(c). In fact, courts disagreed even as to the definition of "toll" with regard to § 108(c).

At the time Defendants filed Plaintiff's action, courts viewed § 108(c) in three ways. Some courts held that § 108(c) "tolls" or "suspends" statutes of limitations so that the clock stopped running upon imposition of the bankruptcy stay, to pick up where it left off when the stay terminated. *See e.g., McKinney v. Waterman Steamship Corp.,* 739 F.Supp. 678, 682 (D.Mass.1990) (holding that the running of the statute of limitations was "suspended" once the stay was imposed, but upon the lifting of the stay the clock began to run again), *aff'd,* 925 F.2d 1 (1st Cir.1991); *Major Lumber Co., Inc. v. G & B Remodeling, Inc.,* 817 S.W.2d 474, 477–78 (Mo.Ct.

App.1991) (where limitation period was six months, the only days counting toward the six months were those days between the time the cause of action accrued and when debtor filed for bankruptcy, plus the number of days after the stay was lifted); *Garbe Iron Works, Inc. v. Priester,* 99 Ill.2d 84, 75 Ill.Dec. 428, 457 N.E.2d 422 (1983) (where limitation period tolled for 133 days by stay, § 108(c)(1) provides plaintiff an additional 133 days to file suit after limitation period had expired).

Other courts held that § 108(c) "tolls" or "suspends" the expiration of the statute of limitations until 30 days after notice of termination of the stay. *See e.g., In re Richardson Builders, Inc.,* 123 B.R. 736, 741 (Bankr. W.D.Va.1990) (holding that § 108(c) "suspends the expiration of the time period for filing" suits for 30 days from termination of the stay, unless the period expired before the stay began); *In re Hearn,* 18 B.R. 605, 607 (Bankr.D.Neb.1982) (holding that § 108(c) "tolls a statute of limitation on a civil cause of action still viable on the date of filing until 30 days after notice of the event which terminates the automatic stay"); *In re Design Builders, Inc.,* 18 B.R. 392, 395 (Bankr.D.Idaho 1981) (holding that limitation period was "tolled by § 108(c) until 30 days" following termination of the stay).

Yet, other courts held that section 108(c) did not "toll" or "suspend" statutes of limitation, but merely "extended" the right to bring an action for 30 days following notice of termination of the stay. *See e.g., In re Coan,* 96 B.R. 828, 833 (Bankr.N.D.Ill.1989) (holding that where "the Movant's lien was undisputably valid at the commencement of the bankruptcy proceedings … § 108(c) extends the period for enforcing the Movants' lien until 30 days after termination of the automatic stay"); *Grotting v. Hudson Shipbuilders,* 85 B.R. 568, 570 (W.D.Wash.1988) (holding that § 108(c) does not toll the running of a statute of limitations, "but rather extends the statute of limitations until 30 days" after the termination of the stay); *In re Baird,* 63 B.R. 60, 62–63 (Bankr.W.D.Ky.1986) (section 108 does not in and of itself suspend the statute of limitations, it merely extends a creditor's right to bring an action for 30 days

after the stay is lifted).[1]  Courts in the latter two categories essentially agreed that 30 days after notice of termination of the stay was the outer limit for filing an action, absent some special suspension statute, where the statute of limitations would have expired during the stay.  The only difference is in their use of the words "tolls" or "suspends" versus "extends."  It is a semantic, not substantive difference.  But regardless, in 1992 the law was clearly unsettled as to § 108(c)'s tolling effect.[2]

Defendants counterargue, however, that even if the law was unsettled throughout the country as to the tolling effect of § 108(c), in the case of *In re Morton*, 866 F.2d 561 (2d Cir.1989), the Second Circuit clearly held that § 108(c) tolls the statute of limitations such that the clock stopped upon imposition of the stay, and ran again upon termination of the stay.  Defendants claim that they acted in accordance with *Morton*, and therefore acted reasonably under the circumstances.

Viewing the legal landscape as it existed in August of 1992, this Court does not draw the same conclusions from *Morton* as do the Defendants.  The *Morton* court held "that § 108(c) . . . tolls New York's ten-year period until the automatic stay is terminated." 866 F.2d at 565.  However, contrary to Defendants' arguments, the Circuit's use of the word "toll" does not automatically translate into a holding that under § 108(c) the limitations clock stops upon imposition of the stay, and then runs again upon notice of termination of the stay.  As noted above, courts use the word "toll" with regard to § 108(c) to mean very different things.  Therefore, *Morton* requires now, and required then, a closer analysis as to what the Circuit meant by "toll" with regard to § 108(c).

The question presented in *Morton* was whether a judgment lien, normally valid under New York law for ten years, remains enforceable after expiration of the ten-year period when during that period the property subject to the lien becomes part of a bankrupt estate protected by the automatic stay pursuant to bankruptcy law.  A bank held a judgment lien on the debtor's property, which was docketed on December 10, 1975.  The debtor filed for bankruptcy on October 26, 1982.  In late 1985, about the time the lien was due to expire under state law, the bank filed for extension of its judgment lien.  The New York Supreme Court issued an order extending the lien "for as long as plaintiff is stayed by defendant Joan Morton's filing of a petition in Bankruptcy, plus three months after the lifting of such stay." *Flushing National Bank v. Trident Construction Corp.*, No. 24949, Motion No. 15,-076 (N.Y.Sup.Ct. February 25, 1986).  On June 6, 1986, Morton moved in bankruptcy court for an order avoiding the bank's judgment lien on the ground that the bank failed to properly extend its lien pursuant to N.Y.Civ.Prac. L. & R. § 5203(b) (McKinney 1978).  The bankruptcy court denied Morton's motion, and Morton appealed to the district court, and then to the Circuit.

---

1.  Curiously, in their moving papers Defendants cite *In re Coan*, 96 B.R. 828 (Bankr.N.D.Ill.1989) and *In re Design Builders* 18 B.R. 392 (Bankr.D.Idaho 1981) as support for their contention that in August of 1992, section 108(c) "tolled" the statutes of limitations by stopping the clock when the stay is commenced, and running the clock again once the stay is lifted. These cases do not support Defendant's view. As noted above, *In re Design Builders* found that § 108(c) "tolled" a statute of limitations for 30 days following termination of a stay, and *In re Coan* held that it "extends" the period for filing until 30 days after the stay terminates, where the limitations period expires during the stay. Defs. Mem. in Support, at 9.

This serves to highlight the fact that courts, and even litigants, used the term "toll" interchangeably to mean stopping and then starting the clock again, or merely suspending expiration of the limitations period until 30 days after termination of the stay.

2.  In 1989 the Wyoming Supreme Court noted the split on the issue of § 108(c) and "tolling":

A survey of the cases addressing the question reveals a division in authority as to whether § 108(c) operates to suspend the running of any applicable limitation period, thereby extending the creditor's time to act for a period equal to the time the action was stayed by the Bankruptcy Code, or whether it merely provides an additional thirty days to commence or continue an action once the stay is lifted.

*Diamond Hill Investment Co. v. Shelden*, 767 P.2d 1005, 1011 (Wyoming Sup.Ct.1989). The court did not adopt either interpretation because the plaintiff's complaint was timely filed under both views.

Among other grounds, the bank argued before the Circuit that under § 108(c),

> the running of the ten-year expiration period governing the bank's judgment lien was suspended on October 26, 1982 while the lien was still less than seven years old, so that, under § 108(c)(2) of § 108(c) the bank will have 30 days after the automatic stay is terminated to enforce its claims under the protection of the lien or to take steps to further extend the lien.[3]

*Morton,* 866 F.2d at 566.

The Circuit surmised that no other circuit court had addressed the question "whether § 108(c) *tolls the expiration of periods* governing the life of statutory liens" and that bankruptcy courts are split on the issue. *Id.* at 566 (emphasis added). The Circuit concluded that if a limitation period was allowed to run and subsequently expire during a bankruptcy stay, it "would give the debtor the power to eliminate certain secured claims simply by filing for bankruptcy at the appropriate time and then allowing the limitation period to run while it remained under the protection of the automatic stay." *Id.* at 567. The Court found that where the limitation period governing the lien had not expired at the time Morton commenced her bankruptcy proceeding, "the running of the period is tolled pursuant to § 108(c)(1), (2)." *Id.* at 566.

The difficulty in interpreting *Morton* is that the Circuit never stated exactly what interpretation of "toll" it was adopting when used in the context of § 108(c). In holding that under § 108(c) the limitation period was "tolled" the Circuit cited three cases that agreed on one principle regarding § 108(c)— the statute of limitations will not be allowed to expire during a stay such that once the stay is lifted, the debtor is free of all claims which were valid prior to the stay. *Id.* at 566 (citing *In re Victoria Grain Co.,* 45 B.R. 2, 7 (Bankr.D.Minn.1984); *In re Houts,* 23 B.R. 705, 707 (Bankr.W.D.Mo.1982); *In re Design Builders, Inc.,* 18 B.R. 392 (Bankr.D.Idaho 1981)). However, those three cases are not

in agreement as to exactly how § 108(c) prevents the expiration of a limitations period. *Victoria Grain* held that § 108(c) "acts to extend the time for filing" a complaint where the claim did not expire prior to the stay; *Houts* held only that § 108(c) "tolls" a statute of limitations during a stay, without mentioning what the effect of that toll would be; and *Design Builders* held that the limitations period was "tolled by § 108 until 30 days" following termination of the stay. By citing these cases, the Circuit must have understood the disagreement as to the meaning of "toll" with regard to § 108(c), however the Circuit chose not to resolve the question as to § 108(c)'s tolling effect.

Consequently, a close analysis of *Morton* reveals only one limited holding: § 108(c) tolls the expiration of a statute of limitations *during* a bankruptcy stay, or until that automatic stay is terminated. Once the stay is terminated, *Morton* does not indicate what the effect of the "toll" will be. *Morton* reaches no explicit conclusion as to whether a plaintiff, such as Mr. Skywark, will have 30 days to file his action after receiving notice of the termination, or whether he will have whatever time was left on the statute of limitations when the stay was imposed. *Morton* holds only that § 108(c) prevents the expiration of the statute of limitations on a claim, such as Mr. Skywark's, that was valid when the debtor filed for bankruptcy. The Circuit never reached how much time a claimant had to file his claim upon termination of the stay. *See e.g., In re Hunters Run Ltd. Partnership,* 875 F.2d 1425, 1429 (9th Cir.1989) (citing to *Morton* for proposition that § 108(c) prevents a debtor from taking unfair advantage by filing for bankruptcy and allowing creditor's limitation period to expire, and finding that § 108(c) tolls expiration of limitation period without stating how long claimant has to file once stay is lifted); *In re Deicas,* 137 B.R. 51, 55 (Bankr. S.D.Cal.1992) (citing to *Morton* for the proposition that § 108(c) was intended to remedy the situation where a debtor filed bankruptcy to allow the statute of limitations to run, and

---

**3.** Interestingly, the bank in *Morton* assumed it only had 30 days to enforce its claim upon termination of the claim. The bank never hinted that it should have the three years left in the ten-year

limitation period when Morton filed for bankruptcy. Further, the Circuit never disagreed with the bank's view of § 108(c).

then used the statute of limitations as a complete defense, and holding that § 108(c) does not suspend the running of the limitation period but rather grants claimants 30 days after the stay to file).

*Morton* could not have definitively told the Defendants that the limitations period for filing Plaintiff's claim stopped running when the debtor filed for bankruptcy, and began running again upon notice of termination of the stay. In light of the very unsettled caselaw in 1992 as to § 108(c)'s "tolling" effect, the fact that *Morton* cited cases which took different views as to the "tolling" effect, that the bank believed it had no more than 30 days to file under § 108(c) and the Circuit did not disagree, and that *Morton* only explicitly addressed what happened during the stay, this Court cannot make a finding, as a matter of law, that the Defendants took a reasonable course of conduct under the circumstances.

Defendants knew with certainty that Plaintiff's claim would still be valid upon termination of the stay; they could not know whether they had any longer than 30 days to file his claim upon receiving notice of termination of the stay. The Second Circuit had not definitively ruled on the issue, and the caselaw throughout the country was unsettled. Where a client allegedly suffered serious injury, his claim accrued almost six years earlier, and the law was unclear as to whether the lawyer would have any more than 30 days to file the claim upon termination of a bankruptcy stay, this Court cannot find that a lawyer pursued a reasonable course of conduct by waiting several months after the stay to file, where that decision so manifestly risked the loss of his client's claims and deprived the client of his day in court.

Plaintiff also put forward evidence that Defendants may not have made an "honest mistake of judgment," and therefore, summary judgment must be precluded. Under New York law, an attorney may not be liable for "honest mistakes of judgment," *Bernstein v. Oppenheim & Co.*, 160 A.D.2d 428, 430, 554 N.Y.S.2d 487 (1st Dept.1990), and Defendants have stated that this motion for summary judgment is at least partially "based upon the settled proposition that attorneys

not be liable for 'honest mistakes of judgment.'" Defs.Mem. in Supp., at 2.

■ Plaintiffs have submitted an affidavit which raises a genuine issue of material fact as to Defendants' assertion that they reasonably interpreted *Morton* to mean that § 108(c) tolled the statute of limitations such that the clock stopped during the life of the stay, and then began running again upon termination of the stay. The affidavit of Plaintiff's wife, Esterlene N. Skywark, states that "Mr. Isaacson *knew* that he had only 30 days to file the case." E. Skywark Aff. ¶ 3. Mrs. Skywark alleges that when her husband received a letter stating that the stay had been lifted, she called "Mr. Isaacson to make sure he got the papers and [to] ask what was going to happen. He said to me, 'don't worry, we have 30 days to file and I'm on top of things.'" *Id.* When the Skywarks learned that the case was time-barred, Mrs. Skywark stated:

> ... Mr. Isaacson admitted that he filed it too late. One time, he said sort of apologetically, that he was getting old and "sometimes things slide by." Another time I talked to him, the reason he gave me for filing Peter's case too late was that his secretary's typewriter was broken and that she didn't get the papers ready! I asked him how in a big office with lots of lawyers and secretaries around he couldn't get the papers typed up somehow, and then he said something about his secretary being out sick.

*Id.* ¶ 4. In their reply papers, Defendants include an affidavit by Mr. Isaacson denying ever having made these statements. Mr. Isaacson asserts Mrs. Skywark "invented" this account. Isaacson Aff. ¶ 1. However, Mrs. Skywark's affidavit bears directly on the issue of whether Defendants made an "honest mistake of judgment," because if they did not, they face potential liability.

■ Further, if Mr. Isaacson was aware that he may have had only 30 days to file Plaintiff's claim, this also brings into question whether his conduct was reasonable under the circumstances. Where the law is unsettled, and an attorney believes that he may only have 30 days to file a client's claim or

the claim will be lost forever, and then the attorney does not file it within that time period, this Court cannot find that he acted reasonably under the circumstances. Moreover, Mrs. Skywark's affidavit calls into question the Defendants' assertions as what they truly believed state of the law to be. Plaintiff is entitled to have these issues brought before a jury.

After carefully reviewing the arguments and examining the cases cited by both parties, this Court declines to find as a matter of law that Defendants chose a "reasonable" course of conduct under the circumstances. Under New York law, absent a finding that Defendants pursued a reasonable course of conduct as a matter of law, a determination that a course of conduct constitutes malpractice requires findings of fact. *See Bernstein,* 554 N.Y.S.2d at 489. Consequently, summary judgment is inappropriate.

### Conclusion

For the reasons set forth above, Defendants' motion for summary judgment is denied. There will be a pretrial conference on December 5, 1996 at 9:45 a.m.

**SO ORDERED.**