[No. H010695. Sixth Dist. Aug. 18, 1994.]

GLADYS STALBERG et al., Plaintiffs and Appellants, v.
WESTERN TITLE INSURANCE COMPANY, Defendant and Respondent.

ROBERT WREDE et al., Plaintiffs and Appellants, v.
WESTERN TITLE INSURANCE COMPANY, Defendant and Respondent.

928

**COUNSEL**

Louis A. Highman and Bruce J. Highman for Plaintiffs and Appellants.

McManis, Faulkner & Morgan and Peter Uzzi for Defendant and Respondent.

## Opinion

**MIHARA, J.**—This appeal arises out of a slander of title action initiated by plaintiffs in June 1983. Plaintiffs prevailed at a jury trial, but this court reversed and remanded for a new trial on defendant's statute of limitations defense because the trial court had failed to instruct the jury that the knowledge of plaintiffs' attorney was imputed to plaintiffs. After remittitur, defendant obtained summary judgment on the slander of title cause of action on the basis of the statute of limitations. Plaintiffs challenge this summary judgment. We conclude that the doctrine of equitable tolling applies and therefore reverse the judgment.

### Discussion

The background of this long-running dispute is set forth in *Stalberg v. Western Title Ins. Co.* (1991) 230 Cal.App.3d 1223 [282 Cal.Rptr. 43]. Appellate review of a summary judgment is de novo. (*Stratton v. First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071 [258 Cal.Rptr. 721]; *Barisich v. Lewis* (1990) 226 Cal.App.3d 12, 15 [275 Cal.Rptr. 331].) This slander of title action was initiated in June 1983. The applicable limitations period is three years. (Code Civ. Proc., § 338, subd. (g).) Plaintiffs claim that (1) their cause of action for slander of title did not accrue until 1981, (2) defendants are estopped from asserting the bar of the statute of limitations, and (3) the limitations period should be equitably tolled.

### A. *Accrual*

■ "[T]he limitations period begins [to run] when the plaintiff suspects, or should suspect, that [it] has been wronged." (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1114 [245 Cal.Rptr. 658, 751 P.2d 923]; cf. Civ. Code, § 19.) ■ "While resolution of the statute of limitations issue is normally a question of fact, where the uncontradicted facts established through discovery are susceptible of only one legitimate inference, summary judgment is proper." (*Jolly v. Eli Lilly & Co., supra*, 44 Cal.3d at p. 1112.) ■ Slander of title occurs when there is an unprivileged publication of a false statement which disparages title to property and causes pecuniary loss. (*Gudger v. Manton* (1943) 21 Cal.2d 537, 541-546 [134 P.2d 217]; *Seeley v. Seymour* (1987) 190 Cal.App.3d 844, 858 [237 Cal.Rptr. 282]; *Howard v. Schaniel* (1980) 113 Cal.App.3d 256, 263-264 [169 Cal.Rptr. 678].)

■ The undisputed facts support defendant's claim that in 1979 plaintiffs were aware of facts sufficient to cause them to suspect that defendant had slandered their title. Plaintiffs are downstream property owners. Defendant is their title insurer. Between 1963 and 1974, defendant drafted and

recorded deeds for several upstream property owners which included a fictitious 60-foot wide easement across plaintiffs' properties. Defendant refused to insure the fictitious easement because it knew that the grantor did not have title to the easement. In 1971, plaintiff Thomson first learned that an upstream owner was claiming a 60-foot wide easement through plaintiffs' properties. When Thomson asked defendant about this claim, defendant reassured him that there was no such easement over plaintiffs' properties. In 1972, plaintiffs sought and obtained legal advice on this matter from Attorney Austen Warburton and his law firm. Warburton traced plaintiffs' chain of title back to the United States Government and found no legal basis for the fictitious easement. In 1975, Warburton purchased one of the downstream properties, and, in 1977, plaintiffs and Warburton initiated a quiet title action against the upstream property owners.

In February 1979 plaintiffs' attorney became aware that defendant had recorded the upstream property owners' deeds containing the fictitious easement. In May 1979, plaintiffs' attorney learned that, although defendant was the title insurer for the upstream property owners, defendant had not insured "any of [the upstream property owners] as having an easement over the plaintiffs' lands." In November 1979, plaintiffs' attorney discovered that the description of the fictitious easement in the upstream property owners' deeds had probably been drafted by defendant. Plaintiffs were not ultimately required to pay any legal fees for their attorney's services prior to January 1981. They paid for half of their attorney fees incurred after that date.

The undisputed facts establish that plaintiffs' attorney was aware, in 1979, that (1) the 60-foot wide easement over plaintiffs' land was fictitious, (2) defendant had recorded the fictitious easement, and (3) although defendant had insured the upstream property owners' title, it had *not* insured the 60-foot wide easement. Since plaintiffs' attorney ought to have, "in good faith and the exercise of ordinary care and diligence," communicated this information to plaintiffs, plaintiffs must be charged with knowledge of these facts. (Civ. Code, § 2332; *Lazzarevich* v. *Lazzarevich* (1952) 39 Cal.2d 48, 50 [244 P.2d 1].) These facts triggered the commencement of the limitations period. Plaintiffs' imputed knowledge that defendant, their title insurer, had recorded, but not insured, the fictitious easement over their property in deeds to the upstream property owners, who were also insureds of defendant, should have caused plaintiffs to suspect that defendant had slandered their title.

The fact that plaintiffs did not actually pay for litigation costs incurred prior to 1981 does not mean that they did not incur or suspect that they would incur pecuniary costs as a result of defendant's slander of their title.

In 1979, plaintiffs' attorney informed plaintiffs that defendant had agreed to pay "50% of the fees and costs of this [quiet title] lawsuit." Inferentially, plaintiffs remained liable for the remaining fees and costs. Furthermore, the record establishes that plaintiffs actually anticipated litigation costs from the outset even before 1975. In sum, the undisputed facts established that plaintiffs' cause of action for slander of title accrued no later than 1979.

## B. EQUITABLE ESTOPPEL

Plaintiffs assert that defendant should be equitably estopped from asserting the bar of the statute of limitations because of defendant's "misrepresentations" and "non-disclosures" of pertinent facts to plaintiffs. If, by misrepresenting or concealing the facts, a defendant induces a plaintiff to delay filing an action, the defendant will be estopped from taking advantage of his wrongful conduct. (*Pashley* v. *Pacific Elec. Ry. Co.* (1944) 25 Cal.2d 226, 231 [153 P.2d 325]; *Prudential-LMI Com. Insurance* v. *Superior Court* (1990) 51 Cal.3d 674, 689-690 [274 Cal.Rptr. 387, 798 P.2d 1230]; *Baker* v. *Beech Aircraft Corp.* (1974) 39 Cal.App.3d 315, 323 [114 Cal.Rptr. 171, 91 A.L.R.3d 981].) " 'One cannot justly or equitably lull his adversary into a false sense of security, and thereby cause his adversary to subject his claim to the bar of the statute of limitations, and then be permitted to plead the very delay caused by his course of conduct as a defense to the action when brought.' " (*Carruth* v. *Fritch* (1950) 36 Cal.2d 426, 433 [224 P.2d 702, 24 A.L.R.2d 1403].)

Plaintiffs claim that they relied to their detriment upon numerous misrepresentations by defendant. We conclude that none of these alleged misrepresentations could have induced plaintiffs to delay filing their slander of title cause of action. In both 1971 and 1978, defendant told plaintiffs that there were no easements recorded over their property in favor of the upstream property owners. Plaintiffs could not have relied upon these statements to their detriment because, even in 1971, plaintiffs were already aware of recorded deeds containing the fictitious easement. Defendant also told plaintiffs, in 1978, that plaintiffs' attorney's "continued representation of you shall in no way prejudice any rights or claims you may have against this company pursuant to the terms of our title policy." In December 1981, defendant wrote to plaintiffs and offered the following explanation for its conduct. "We assumed no responsibility for the [fictitious] easement deed . . . and specifically denied the issuance of any title insurance [to the upstream property owners] as to said easement. We had no duty to inform you of such deed, especially since it would not be in your respective chains of title."

Defendant's representations were confined to its obligations as plaintiffs' title insurer. If this were an action based on defendant's breach of a duty

arising out the insurer-insured relationship between defendant and plaintiffs, plaintiffs' claim that they were misled by these representations might have merit. However, because plaintiffs' slander of title cause of action is not based on or related to defendant's breach of its obligations as plaintiffs' insurer, defendant's representations regarding these obligations could not have induced plaintiffs to delay filing their slander of title cause of action. Accordingly, there is no basis for an estoppel.

## C. EQUITABLE TOLLING

■ Plaintiffs ask us to apply the doctrine of equitable tolling to relieve them from the bar of the statute of limitations. ■ "[T]he equitable tolling doctrine fosters the policy of the law of this state which favors avoiding forfeitures and allowing good faith litigants their day in court." (*Addison* v. *State of California* (1978) 21 Cal.3d 313, 320-321 [146 Cal.Rptr. 224, 578 P.2d 941].) A plaintiff will be relieved "from the bar of a limitations statute when, possessing several legal remedies he, reasonably and in good faith, pursues one designed to lessen the extent of his injuries or damage." (*Id.* at p. 317.) "[A]pplication of the doctrine of equitable tolling requires timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff." (*Id.* at p. 319; *Mitchell* v. *Frank R. Howard Memorial Hospital* (1992) 6 Cal.App.4th 1396, 1406 [8 Cal.Rptr.2d 521].) The "injustice to the plaintiff occasioned by the bar of his claim" must be balanced against the policy underlying the statute of limitations. (*Addison* at p. 321.)

■ The record before us supports the application of the doctrine of equitable tolling.[1] When plaintiffs first discovered the existence of the fictitious easement, they were unaware of the role defendant had played in creating the easement. Plaintiffs pursued the legal remedy which most

---

[1]In their appellate briefing on this issue, both parties focus their arguments on the California Supreme Court's decision in *Lambert* v. *Commonwealth Land Title Ins. Co.* (1991) 53 Cal.3d 1072 [282 Cal.Rptr. 445, 811 P.2d 737]. In that case, a title insurer had refused to defend its insured in an action concerning a recorded easement. (*Id.* at p. 1075.) The insured successfully defended itself in that action, and, after judgment was entered in its favor in that action, it promptly filed an action against the title insurer for wrongfully refusing to defend it. The trial court sustained the title insurer's demurrer on statute of limitations grounds. (*Ibid.*) The California Supreme Court held that "justice and fairness" required that the limitations period for the insured's coverage action be equitably tolled until the resolution of the underlying action. (*Id.* at pp. 1080-1081.)

*Lambert* has no bearing on the application of the doctrine of equitable tolling to the case before us. The seminal California Supreme Court case on the doctrine of equitable tolling is *Addison*, not *Lambert*. *Lambert* is a novel extension of the equitable tolling doctrine to a situation where the action involved a continuing duty. Because this case does not involve a continuing duty, *Lambert* is inapplicable. We therefore analyze the equitable tolling issue in accordance with the California Supreme Court's explication of that doctrine in *Addison*.

readily addressed the cloud on their title—a quiet title action against the upstream property owners. They gave timely notice to defendant, and defendant participated in the quiet title action both by partially financing it and by receiving frequent updates on its progress from plaintiffs' attorney. During the progress of the quiet title litigation, plaintiffs learned that defendant was responsible for the recording of the fictitious easement. Plaintiffs corresponded with defendant, informing defendant of their awareness of its culpability in this matter, and, upon the completion of the quiet title action, plaintiffs promptly filed an action against defendant for slander of title.

Since plaintiffs selected the legal remedy "designed to lessen the extent of [their] injuries," gave timely notice to defendant and acted reasonably and in good faith in pursuing first the quiet title action and then this action, equity favors tolling the limitations period unless prejudice to defendant will result therefrom. (*Addison* v. *State of California, supra,* 21 Cal.3d at p. 317.) Defendant claims that it "will suffer substantial prejudice" if the doctrine of equitable tolling is applied. Defendant does not suggest what this prejudice might be other than being held liable to plaintiffs for slandering their title.[2] In its points and authorities below, defendant claimed that it would suffer "substantial prejudice" if the limitations period was tolled because it would not be able to pursue a statute of limitations defense to plaintiffs' claim. This argument confounds reason. Loss of a statute of limitations defense to a cause of action is not the prejudice which is contemplated under the doctrine of equitable tolling. The equitable tolling of the statute of limitations is designed to obviate a statute of limitations defense. The "prejudice" which may preclude application of the doctrine of equitable tolling is prejudice to the defendant's ability to defend a claim *on the merits.* Defendant has made no showing at any time that its ability to defend against plaintiffs' claim on the merits was prejudiced by plaintiffs' delay in filing this action.[3]

The policy behind the statute of limitations does not outweigh the injustice which would result from plaintiffs' loss of their cause of action. ▮ "[T]he primary purpose of statutes of limitation is to prevent the assertion of stale claims by plaintiffs who have failed to file their action until

---

[2]At oral argument, defendant suggested that it would suffer prejudice because the individual who signed defendant's written 1978 and 1981 representations to plaintiffs regarding defendant's obligations to plaintiffs as their title insurer is now dead. Since these representations are not material to the application of the doctrine of equitable tolling to this case, defendant's assertion of prejudice has no substance.

[3]Defendant also claims that the doctrine of equitable tolling cannot be applied because plaintiffs failed to make a timely assertion that the statute of limitations should be equitably tolled. We disagree. The facts necessary to such an assertion were alleged in the complaint, and plaintiffs' response to defendant's motion for summary judgment asserted that the doctrine of equitable tolling should be applied.

evidence is no longer fresh and witnesses are no longer available. . . . The statutes, accordingly, serve a distinct public purpose, preventing the assertion of demands which through the unexcused lapse of time, have been rendered difficult or impossible to defend." (*Addison* v. *State of California, supra,* 21 Cal.3d at p. 317.) ▋ In this case, defendant has made no showing that its ability to defend against plaintiffs' claim on the merits was harmed by plaintiffs' approximately one year delay in initiating their action.[4] This action was filed in June 1983. This action has already been tried on the merits, and defendant has been found liable. Yet defendant is still unable to suggest how its defense was harmed by this short delay.

Since the record reflects that plaintiffs are entitled to the benefits of the doctrine of equitable tolling and defendant is not prejudiced thereby, the trial court erred in granting summary judgment to defendant on its statute of limitations defense.

## CONCLUSION

The judgment is reversed. Plaintiffs shall recover their appellate costs.

Premo, Acting P. J., and Wunderlich, J., concurred.

A petition for a rehearing was denied September 13, 1994, and respondent's petition for review by the Supreme Court was denied December 15, 1994.

---

[4]The cause of action accrued sometime in 1979 between February and November. The three-year limitations period therefore expired sometime in 1982.