### Agency of Natural Resources v. Richard Towns

[724 A.2d 1022]

No. 97-162

Present: Morse, J., and Martin and Katz, Supr. JJ., Allen, C.J. (Ret.) and Gibson, J. (Ret.), Specially Assigned

Opinion Filed July 31, 1998

Motion for Reargument Denied November 9, 1998

*Gary S. Kessler*, Waterbury, for Plaintiff-Appellee.

*John L. Franco, Jr.*, Burlington, for Defendant-Appellant.

**Morse, J.** Defendant Richard F. Towns appeals from a decision of the Environmental Court affirming a determination by the Secretary of the Agency of Natural Resources that Towns had operated a solid waste management facility without proper certification in violation of 10 V.S.A. § 6605(a). Among other claims, Towns contends that the

Secretary's action was barred by the statute of limitations. We conclude that the court failed to make critical findings and conclusions relating to the statute-of-limitations issue, and, therefore, reverse and remand for further proceedings.

## I.

In 1972, Towns purchased five acres in the Town of Johnson and constructed a home on the site. Because the rear foundation of the house was laid adjacent to a steep embankment, Towns commenced to deposit stumps, construction debris, and demolition material as fill to create a usable backyard. He also used solid waste to fill a small swimming hole located in the front of the property. Towns continued to dump materials on the site until he sold the property to Christine and James Wilkens in June of 1987.

Although Towns had informed the Wilkenses of the existence of the fill prior to the sale, and assured them that it was "safe and legal," they remained concerned about potential safety hazards to their children. Thus, as the trial court found, "[w]ithin a few weeks of purchasing the property . . . Mrs. Wilkens inquired about the legality of the fill with the Attorney General's Office." Mrs. Wilkens testified that she spoke with someone "involved in environmental issues." She identified herself and the property in question, and explained her concern about the fill that Mr. Towns had been dumping on the property. She was asked, in turn, a series of questions about the condition of the site. Based upon her responses, she was informed that such dumping was a common occurrence in Vermont, and that the State would not take action because the fill was covered, was not visible from the road, and was not leaching into water. In April of 1989, Mrs. Wilkens again contacted the Attorney General's office to express her concerns about the dump site, but again no action resulted.

In 1992, the Wilkenses attempted to sell the property. A prospective purchaser was concerned about the fill, however, and arranged to have several test pits dug to determine its contents. A friend of the prospective purchaser contacted James Coyne, an environmental enforcement officer for the Agency, who came out to observe the dig. Each of the pits revealed the presence of solid waste. Several years later, in September 1996, the Secretary issued an administrative order alleging that Towns had constructed and operated a solid waste disposal facility without certification in violation of 10 V.S.A. § 6605(a). The order required Towns to engage a consultant to

"develop a site remediation plan," remove the solid waste, and restore the site to grade by depositing clean fill.

Towns appealed the administrative order to the environmental court. Following an evidentiary hearing, the court affirmed the Secretary's determination that a violation of 10 V.S.A. § 6605(a) had occurred, but vacated and remanded the order to clarify the remediation section. The court ruled that its finding of a violation represented a final judgment. V.R.C.P. 54(b). This appeal followed.

## II.

Towns renews on appeal a number of defenses that he asserted before the environmental court, including claims that there was no violation under the applicable law, and that the action was time-barred. Because we conclude that the case must be remanded for further findings on the statute-of-limitations issue which may, if favorable to Towns, be dispositive of the entire proceeding, we decline at this juncture to address Towns's alternative contentions. These claims may be renewed on appeal in the event the trial court determines that the State's action was timely.

The applicable statute of limitations is set forth in 10 V.S.A. § 8015, which provides that environmental enforcement actions "shall be commenced within the latter of: (1) six years from the date the violation is or reasonably should have been discovered; or (2) six years from the date a continuing violation ceases." The trial court determined that Towns's violation — operating a solid waste facility without certification — had ceased when Towns sold the property in 1987, and therefore was not of a continuing nature. The Secretary has not challenged this finding. Accordingly, the sole issue is whether the Secretary's enforcement action was brought within six years from the date that the violation was or reasonably should have been discovered.

Towns argued at trial that even assuming he had committed a violation, it was or reasonably should have been discovered in June of 1987, when Mrs. Wilkens first contacted the Attorney General's office. Thus, Towns claimed that the Secretary's action, commenced some nine years later in 1996, was time-barred. The trial court disagreed, stating in its oral ruling that the limitations issue did not "turn on the date when Mrs. Wilkens first called the State or whom she reached when she first called the State"; the issue turned, rather, "on the nature of the violation itself." In this regard, the court observed that the

violation was on private property. It was fill being placed in a ravine for private purposes. It was not on property holding itself out as a disposal location or for any other reason obvious to any regulator that this property should have been inspected . . . . And, therefore, we must conclude that the Agency of Natural Resources could not reasonably have been expected to have discovered this violation until 1992 when it was brought to their attention.

Although uncertain of the court's precise meaning, we are unable to agree with its broad conclusion that "when Mrs. Wilkens first called the State [and] whom she reached" was irrelevant as a matter of law to the statute-of-limitations issue. On the contrary, it appears to us that the question of when the Secretary discovered or reasonably should have discovered the violation turns on precisely whom Mrs. Wilkens contacted, when she made the contact, and what she reported.*

■ While we have not previously construed § 8015, the general principles governing the accrual of actions under discovery statutes are well settled. For our purposes, these principles may be broken down into three general rules. First, a cause of action is generally said to accrue upon the "'discovery of facts constituting the basis of the cause of action *or* the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery.'" *Union Sch. Dist. v. Lench*, 134 Vt. 424, 427, 365 A.2d 508, 511 (1976) (quoting *Omaha Paper Stock Co. v. Martin K. Eby Constr. Co.*, 230 N.W.2d 87, 89-90 (Neb. 1975)). Thus, the statute of limitation begins to run when the plaintiff has notice of information that would put a reasonable person on inquiry, and the plaintiff is ultimately "chargeable with notice of all the facts that could have been obtained by the exercise of reasonable diligence in prosecuting [the] inquiry." *Lamoille County Sav. Bank & Trust Co. v.*

---

*The fact that the site was located on private property and was not visible from the road did not necessarily render it any less discoverable. Had the Secretary received information sufficient to trigger an investigation, an investigator could have entered, inspected, and obtained samples from the premises, or obtained a warrant to do so. See 10 V.S.A. § 6609 (Secretary may enter, inspect, and obtain samples from any person storing, treating, or disposing of solid waste, and "upon any refusal of entry . . . may apply for and obtain a warrant or subpoena to allow such entry, inspection, [or] samplying"); *id.* § 8005(a)(2) ("An investigator may investigate upon receipt or discovery of information that an activity is being or has been conducted that may constitute or cause a violation.").

*Belden*, 90 Vt. 535, 541, 98 A. 1002, 1005 (1916).

A second related principle is that notice or information communicated to an agent is generally presumed to be communicated to the principal. As we observed in *Solomon v. Design Development, Inc.*, 143 Vt. 128, 131, 465 A.2d 234, 236 (1983), "notice to an agent is notice to the principal . . . regardless of whether the agent actually communicated his knowledge" to the principal. Furthermore, because the relationship between attorney and client is that of agent and principal, notice or information conveyed to an attorney will be imputed to the client. See *Abell v. Howe*, 43 Vt. 403, 409 (1871) (where attorney had notice of a trust, "the law will presume the notice was communicated to the client"); see also *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 92 (1990) ("Under our system of representative litigation, 'each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney."'") (quoting *Link v. Wabash R.R.*, 370 U.S. 626, 634 (1962) (quoting *Smith v. Ayer*, 101 U.S. 320, 326 (1880)); *McKinney v. Waterman S.S. Corp.*, 925 F.2d 1, 5 (1st Cir. 1991) ("Notice to an attorney is notice to the client.").

■ It follows, therefore, that notice to an attorney sufficient to trigger the statute of limitations is imputed to the client, and will bar a claim, regardless of whether that information was actually communicated to the client. *Stalberg v. Western Title Ins. Co.*, 32 Cal. Rptr. 2d 750 (Ct. App. 1994), provides a perfect illustration. There, the court held that a slander-of-title action had accrued when the plaintiffs' attorney discovered that the defendant had drafted and recorded a fictitious easement, although the attorney had not conveyed the information to his client. As the court explained, "Since plaintiffs' attorney ought to have . . . communicated this information to plaintiffs, plaintiffs must be charged with knowledge of these facts. . . . Plaintiffs' imputed knowledge . . . should have caused plaintiffs to suspect that defendant had slandered their title." *Id.* at 752-53. Accordingly, the facts known to the plaintiffs' counsel "triggered the commencement of the limitations period," which expired prior to the filing of the claim. *Id.* at 753.

*Irwin* is also instructive. There, the United States Supreme Court held that a thirty-day claims-filing period was triggered when the claimant's attorney received notice of the claimant's right to sue. As the high court observed, notice to an attorney or "to an attorney's office . . . qualifies as notice to the client." 498 U.S. at 93. Consequently, the Court held that the claim was time-barred. Similarly, in

*McKinney* the court of appeals ruled that information conveyed to the plaintiff's attorney would be imputed to the plaintiff so as to trigger the statute of limitations and bar the plaintiff's personal injury claim. 925 F.2d at 4-5.

■  Finally, the determination of the accrual date of a claim is generally a question reserved for the trier of fact. See *Lillicrap v. Martin*, 156 Vt. 165, 172, 591 A.2d 41, 44 (1989).

■  Applying the foregoing principles to the case at bar, the critical question that emerges is whether the Secretary knew or should have known of the violation following Mrs. Wilkens's discussion with the Attorney General's office in June of 1987. As noted, the trial court found that Mrs. Wilkens "inquired about the legality of the fill with the Attorney General's office" in June of 1987. The court made no findings, however, on such critical questions as the identity of the person with whom she spoke, and the nature and content of the information she conveyed. Nor did the court draw any conclusion as to whether that information should reasonably have triggered an investigation that would have disclosed the alleged violation and prompted an enforcement action. We conclude, therefore, that the case must be remanded to the trial court for further proceedings to address these factual and legal issues relating to the statute-of-limitations defense. We note in this regard the general principle that the burden of establishing a statute-of-limitations defense rests with the party pleading it. See *Monti v. Granite Sav. Bank & Trust Co.*, 133 Vt. 204, 209, 333 A.2d 106, 109 (1975).

*Reversed and remanded for further proceedings consistent with the views expressed herein.*