Howe Center, Ltd. v. Suburban Propane, L.P., No. 702-9-08 Rdcv (Cohen, J., Jan. 28, 2010)

[The text of this Vermont trial court opinion is unofficial.  It has been reformatted from the original.  The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

**STATE OF VERMONT**
**RUTLAND COUNTY**

|  |  |  |
|---|---|---|
| | ) | |
| **HOWE CENTER, LTD.,** | ) | **Rutland Superior Court** |
| | ) | **Docket No. 702-9-08 Rdcv** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **SUBURBAN PROPANE, L.P., D/B/A** | ) | |
| **SUBURBAN PROPANE,** | ) | |
| | ) | |
| **Defendant** | ) | |

**DECISION ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY**
**JUDGMENT, FILED JULY 2, 2009**

This matter came on before the Court on Defendant Suburban Propane, L.P.'s

(Suburban) Motion for Partial Summary Judgment, filed July 2, 2009. Plaintiff Howe

Center LTD. (Howe) brought claims for breach of contract, fraud, breach of the covenant

of good faith, and action for accounting, arising out alleged breaches by Suburban of

contracts for the supply of propane gas and for the management of Howe Center's

propane distribution system.

Plaintiff Howe Center, LTD. is represented by Michelle A. Kenny, Esq. and

Rodney E. McPhee, Esq. Defendant Suburban Propane, L.P. is represented by William B.

Miller, Jr., Esq.

**Summary Judgment Standard**

Summary judgment is appropriate where there is no genuine issue of material fact

and the party is entitled to judgment as a matter of law. V.R.C.P. 56(c)(3). In response to

an appropriate motion, judgment must be rendered "if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, ... show that

there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." V.R.C.P. 56(c)(3). In determining whether a genuine issue of material fact exists, the court accepts as true allegations made in opposition to the motion for summary judgment, provided they are supported by evidentiary material. *Robertson v. Mylan Labs*, *Inc.,* 2004 VT 15, ¶ 15, 176 Vt. 356. The nonmoving party then receives the benefit of all reasonable doubts and inferences arising from those facts. *Woolaver v. State*, 2003 VT 71, ¶ 2, 175 Vt. 397. Furthermore, where, as here, "the moving party does not bear the burden of persuasion at trial, it may satisfy its burden of production by showing the court that there is an absence of evidence in the record to support the nonmoving party's case. The burden then shifts to the nonmoving party to persuade the court that there is a triable issue of fact." *Ross v. Times Mirror, Inc.,* 164 Vt. 13, 18 (1995) (internal citations omitted).

## BACKGROUND

In October 1989, Howe entered into two contracts with Suburban. One was an LP-Gas Sales Agreement (sales agreement) for the supply of liquid propane to Howe's Rutland, Vermont commercial real estate development, the Howe Center, and for the construction of Howe Center's propane infrastructure. The other was a Managing Agency Agreement (managing agreement) which set forth Suburban's responsibilities for managing Howe Center's propane distribution system.

In the sales agreement, Howe agreed to pay $.6333 per gallon of liquid propane. The sales agreement itemized the $.6333 price per gallon as follows:

| | |
|---|---|
| Managing Agency Fee, Per Gallon | $.0750 |
| Per Gallon Construction Add on | $.1610 |
| Price Per Gallon, Subject to Posted Rate, Selkirk, NY | $.3973 |
| Total | $.6333 |

2

The Posted Rate, Selkirk, NY, is also known as the "Selkirk Rate" because Selkirk is the New York town where a major propane pipeline ends. According to the president of Howe, Joseph Giancola, Suburban had told him specifically that the price per gallon propane ($.3973) would be the posted Selkirk Rate. Further, according to Mr. Giancola, Suburban representatives told him that because Suburban was so big, it could obtain propane for a cost less than the Selkirk Rate, charge the Selkirk Rate, and still make a profit.

In January 1993, Howe received a handwritten note from Suburban which stated: "Tina – my appologies [sic] again – please disregard full invoices 939286 and 939293 for transport Received 12/24/92. I keep leaving out the .06 add on profit margin to your price per gallon. I have written out the formula for myself, so this not happen again. Thanks for your patience – Deb." Suburban invoice No. 939293 states: "Gas priced at incorrect price per gallon. price [sic] did not include .06 per gallon profit margin." The "Tina" referred to in the handwritten note is Tina Graves of the Howe Center billing department.

At some point in 2002 or 2003, Mr. Giancola discovered that Suburban was charging Howe a $.06 margin for the delivery of propane. This $.06 margin was included in the $.3973 price per gallon, which was subject to the Selkirk Rate.

Mr. Giancola had numerous conversations with Suburban manager Robert Munukka regarding whether it was appropriate for Suburban to charge Howe a $.06 margin for the delivery of propane. No later than then end of 2003, Howe and Suburban agreed to a reduced margin of $.03 per gallon of liquid propane. Suburban's margin remained at $.03 until Howe terminated the Sales Agreement in August 2008.

Another issue concerning the sales agreement arose in 1997—Howe became aware of interest charges being applied to the promissory note in relation to the construction of Howe Center's propane distribution system. In 2000, Mr. Giancola met and discussed the interest charges with Mr. Manukka and David Macaid, then Northeast Regional Vice President of Suburban. According to Mr. Giancola, at that meeting, Howe and Suburban agreed that the contract for the installation and payment of the fuel distribution system was paid in full and that Suburban would provide Howe with a truckload of propane as reimbursement for the interest.

Almost every year thereafter, Mr. Giancola discussed the interest issue with Suburban and was told each time by Suburban that it would "fix the problem." According to Mr. Giancola, he had several meetings with Mr. Manukka's successor at Suburban, but later meetings were canceled while Suburban continued to assure him that the interest matter would be settled. At some point between 2002 and 2004, Mr. Giancola met with Chris Daly, the regional vice-president for Suburban, to negotiate the interest overcharges. Mr. Daly promised to provide Howe with a 30,000 gallon propane tank in consideration of the interest charges. Suburban never delivered the tank or the truckload of propane gas.

The managing agreement set forth Suburban's duties in managing Howe Center's propane distribution system. These duties included, *inter alia*, reading meters, invoicing Howe Center tenants, collecting and receiving tenants' monthly payments, and forwarding security deposits to Howe. In August 2007, Howe terminated the managing agreement.

On September 16, 2008, Howe filed the instant Complaint, alleging five counts: (I) breach of the sales agreement by Suburban for charging Howe more than the posted Selkirk Rate from 1990-2008; (II) breach of the managing agreement by Suburban for failing to adhere to its duties and obligations under the contract; (III) breach of the implied covenant of good faith and fair dealing by Suburban because it concealed the actual amount charged to Howe in excess of the Selkirk Rate and because it failed to notify and reimburse Howe for interest charged in the construction of the LP-Gas distribution system; (IV) fraud by Suburban because it intentionally and fraudulently concealed facts regarding its obligation to reimburse Howe for interest charged in the construction of the LP-Gas distribution system and for overcharging Howe for propane gas, above the Selkirk rate; and (V) action for accounting seeking a full accounting of all accounts held by Suburban.

In its Motion for Partial Summary Judgment, Suburban argues that that (Count I) Howe's claim for breach of the sales agreement is barred by the time limitations set forth in the Uniform Commercial Code. Suburban also argues that (Count IV) the fraud claims related to interest charged in the construction of the gas distribution system and the overcharging for propane are both time barred by 12 V.S.A. § 511. Suburban further argues that (Count II) breach of the managing agreement and (Count V) action for accounting are both time barred regarding events prior to September 16, 2002, pursuant to 12 V.S.A. § 511. Finally, Suburban argues that Count (III) claims for breach of the covenant of good faith and fair dealing are time barred and duplicative.

5

**DISCUSSION**

*Count I – Breach of Sales Agreement*

The sales agreement was a contract between Suburban and Howe for the sale and delivery of propane gas. Therefore, the contract was for the sale of goods and is governed by the terms of the UCC. See *Levin v. Hoffman Fuel Co.*, 462 N.Y.S.2d 195, 196 (N.Y. App. Div. 1983) (holding that contract which called for sale and delivery of heating oil was "predominately" one for the sale of goods).

An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. 9A V.S.A. § 2-725(1). The cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. 9A V.S.A. § 2-725(2). "The burden of proving that a claim is barred by the statute of limitations rests on the party asserting the defense." *Fucci v. Moseley & Fucci Associates, Ltd.*, 170 Vt. 626, 627 (2000) (mem.) (citing *Monti v. Granite Savings Bank & Trust Co.*, 133 Vt. 204, 209 (1975)).

Even disregarding the 1993 invoice, it is undisputed that at some point in 2002 or 2003, Mr. Giancola discovered that Suburban was charging Howe a $.06 margin for the delivery of propane, included in the rate subject to the posted Selkirk Rate. Furthermore, it is undisputed that no later than the end of 2003, Howe and Suburban agreed to a reduced margin of $.03 per gallon of liquid propane. Suburban's margin remained at $.03 until Howe terminated the sales agreement.

Thus, not only is it undisputed that the alleged breach occurred more than four years prior to the commencement of the action, but it is also undisputed that Howe had knowledge of the breach more than four years prior to commencement. Howe did not file

6

its complaint until September 16, 2008. Even accepting as true Howe's allegations made in opposition to the motion for summary judgment, see *Robertson v. Mylan Labs, Inc.,* 2004 VT 15, ¶ 15, and giving Howe the benefit of all reasonable doubts and inferences arising from those facts, see *Woolaver v. State*, 2003 VT 71, ¶ 2, there is no genuine issue of material fact and Suburban is entitled to judgment as a matter of law as to Howe's claim for breach of the sales agreement. See V.R.C.P. 56(c)(3).

*Count II – Breach of the Managing Agreement; Count V – Action for Accounting*

Howe claims that Suburban breached the managing agreement by failing to properly conduct its duties, including, *inter alia*, reading meters, invoicing and collecting receivables in a timely manner, properly managing the supply of propane to the tenants, and maintaining the gas supply equipment. In bringing an action for accounting, Howe seeks a full and accurate accounting of all accounts held by Suburban arising out of its duties under the managing agreement.

Suburban argues that any breach of the Managing Agreement prior to September 16, 2002, is time barred pursuant to 12 V.S.A. § 511. In response, Howe asserts that it did not discover Suburban's alleged mismanagement until 2007, at the earliest.

Title 12, V.S.A. § 511 sets forth that a civil action shall be commenced within six years after the cause of action accrues and not thereafter. "[A] cause of action for breach of contract accrues when the breach occurs and not when it is discovered." *Alexander v. Morrissey*, 137 Vt. 20, 24 (1979). Therefore, it is irrelevant when Howe discovered Suburban's alleged mismanagement. Any claim that Suburban breached the managing agreement prior to September 16, 2002, is barred by the six-year time limitation set forth

7

in 12 V.S.A. § 511. Likewise, any claim for accounting prior to September 16, 2002, is also barred by 12 V.S.A. § 511.

*Count IV – Fraud*

Howe asserts two separate bases for fraud. First, that Suburban intentionally and fraudulently concealed facts concerning its obligation to reimburse Howe for the interest charged in the construction of the LP-Gas distribution system. Second, that Suburban intentionally and fraudulently concealed facts concerning its overcharging of Howe for propane gas, above the Selkirk Rate.

Howe's claims for fraud are governed by the six-year time limitation set forth in 12 V.S.A. § 511. The Vermont Supreme Court has stated the well-settled general rule governing accrual of actions:

> a cause of action is generally said to accrue upon the discovery of facts constituting the basis of the cause of action *or* the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery. Thus, the statute of limitation begins to run when the plaintiff has notice of information that would put a reasonable person on inquiry, and the plaintiff is ultimately chargeable with notice of all the facts that could have been obtained by the exercise of reasonable diligence in prosecuting the inquiry.

*Agency of Natural Resources v. Towns*, 168 Vt. 449, 452 (1998) (internal quotations and citations omitted).

Concerning Howe's claim for fraud regarding reimbursement of the interest charged in the construction of the LP-Gas distribution system, it is undisputed that in 1997 Howe became aware of interest charges being applied to the promissory note in relation to the construction of Howe Center's propane distribution system. In 2000, Mr. Giancola met and discussed the interest charges with representatives from Suburban.

8

Thus it is undisputed that Howe was put on inquiry no later than 2000. The statute of limitation began to run at that time and Howe did not file suit until September 2008. See *Towns*, 168 Vt. at 452 (stating "the statute of limitation begins to run when the plaintiff has notice of information that would put a reasonable person on inquiry…").

Howe argues that equitable estoppel calls for the tolling statute of the statute of limitations, due to Suburban's promises to "fix the problem" regarding the interest issue. The Court does not agree.

In this case, equitable tolling is applicable only if Suburban actively misled Howe or prevented Howe "in some extraordinary way from filing a timely lawsuit." *Lodge at Bolton Valley Condominium Ass'n v. Hamilton*, 2006 VT 41, ¶ 8, 180 Vt. 497. A party asserting equitable estoppel must satisfy the following elements: (1) that the party to be estopped knew the facts; (2) that the party being estopped intended that its conduct would be acted upon; (3) that the party being estopped was ignorant of the true facts; and (4) that the party asserting estoppel detrimentally relied on the other party's conduct. *Id*.

Howe has presented no evidence that Suburban intended its conduct would be acted upon or that Howe detrimentally relied on Suburban's conduct. Howe asserts that Suburban promised to "fix the problem" regarding the interest issue by promising first a truckload of propane gas and next a propane tank, neither of which was ever delivered. Even taking these assertions as true, there is no evidence that limitations was ever discussed in negotiations—there was neither an express nor an implied agreement for Suburban to waive the limitations period. See *Beecher v. Stratton Corp.*, 170 Vt. 137, 140 (1999) (finding equitable estoppel inappropriate where party never asked adversary, either orally or in writing, to waive or extend the statute of limitations). Furthermore,

9

there is no evidence that Howe was ignorant of the true facts regarding its fraud claim. Howe could have filed its suit at anytime and chose not to until September 2008. Therefore, equitable estoppel is inappropriate and Howe's claim for fraud based on the interest charged on the promissory note is barred by the statute of limitations set forth in 12 V.S.A. § 511.

Howe also alleges that Suburban intentionally and fraudulently concealed facts concerning its overcharging of Howe for propane gas, above the Selkirk Rate. However, Howe received a note from Suburban in January 1993, regarding the $.06 profit margin. As such, Howe had "notice of information that would put a reasonable person on inquiry," see *Towns*, 168 Vt. at 452, and the statute of limitations began to run at that point. Howe did not file suit until September 2008; therefore, Howe's claim for fraud relating to the alleged overcharging for propane gas also is barred by the six-year time limitation set forth in 12 V.S.A. § 511.

*Count III – Breach of the Covenant of Good Faith and Fair Dealing*

Howe claims that Suburban breached the implied covenant of good faith and fair dealing present in the sales agreement by charging Howe in excess of the posted Selkirk Rate and by failing to notify and reimburse Howe for the interest charged in the construction of the gas distribution system. Howe's claim for breach of the implied covenant of good faith and fair dealing relies on the same alleged conduct by Suburban as Howe's claims for breach of contract and fraud.

The Court "will not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when the plaintiff also pleads a breach of contract *based upon the same conduct*." See *Monahan v. GMAC Mortgage Corp.*, 2005 VT 110,

10

¶ 54 fn. 5, 179 Vt. 167 (emphasis in original) (citing *Cary Oil Co. v. MG Ref. & Mktg., Inc.,* 90 F.Supp.2d 401, 419 (S.D.N.Y.2000) (stating "a claim for breach of the implied covenant will be dismissed as duplicative if the conduct allegedly violating the implied covenant is also the predicate for breach of the underlying contract.")).

Furthermore, Howe had "notice of information that would put a reasonable person on inquiry," as to the alleged overcharging of the Selkirk Rate in 1993, and as to the interest issue no later than 2000. See *Towns*, 168 Vt. at 452. Therefore, even if the claim for breach of implied covenant was not duplicative, it would still be barred by the six-year time limitation set forth in 12 V.S.A. § 511.

## ORDER

Defendant Suburban Propane L.P.'s Motion for Partial Summary Judgment, filed July 2, 2009, is GRANTED.

Dated at Rutland, Vermont this _____ day of _____, 2010.

_____
Hon. William Cohen
Superior Court Judge

11