NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 74

No. 2016-317

| | |
|---|---|
| John C. Abajian, M.D. and Margaret C. Abajian | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Civil Division |
| | |
| TruexCullins, Inc. and | January Term, 2017 |
| Thermal Efficiency Construction, Ltd. | |

Helen M. Toor, J.

David Bond of Strouse & Bond, PLLC, Burlington, for Plaintiffs-Appellants.

Evan A. Foxx and Christopher D. Ekman of Heilmann, Ekman, Cooley & Gagnon, Burlington, for Defendant-Appellee TruexCullins, Inc.

Pietro J. Lynn and Sean M. Toohey of Lynn, Lynn, Blackman & Manitsky, P.C., Burlington, for Defendant-Appellee Thermal Efficiency Construction, Ltd.


PRESENT: Reiber, C.J., Dooley,[1] Skoglund, Robinson and Eaton, JJ.


¶ 1. **EATON, J.** Plaintiffs had a new roof installed on their home in 2001. In 2014, after the roof turned out to be defective, plaintiffs sued the architecture and construction firms that designed and installed the roof for negligence and breach of contract. The trial court granted summary judgment to defendants on the ground that the action was barred by the statute of limitations. We now affirm.

---

[1] Justice Dooley was present for oral argument, but did not participate in this decision.

¶ 2.    The following facts are undisputed.[2]  In 2001, plaintiffs Margaret and John Abajian hired architectural firm TruexCullins, Inc., to design additions to both ends of their home in Williston, Vermont.  Plaintiffs hired Thermal Efficiency Construction, Ltd. (TEC) to serve as the general contractor for the project.  As part of the project, a new metal standing seam roof was installed on the entire house.  TEC contracted with Murphy's Metals, Inc. to do the roofing work.  The roof was installed during the winter of 2001-2002.

¶ 3.    Plaintiffs had experienced problems with ice damming on their old roof, which was shingled.  Defendants recommended that plaintiffs install a metal roof to alleviate the problem.[3]  Plaintiffs accepted the suggestion, hoping that the metal roof would result in fewer ice dams.  Mr. Abajian[4] testified in his deposition that he "thought that the metal roof was going to eliminate" the ice damming.

¶ 4.    Very soon after the new roof was complete, plaintiffs noticed that ice dams were continuing to occur at the eaves and that the problem was worse than before.  Plaintiff John Abajian called third-party defendant Murphy's to shovel the roof shortly after it was installed.  Mr. Abajian also hired a different company to install snow guards on the roof to prevent snow from sliding down the roof toward the eaves.  It was Mr. Abajian's idea to install the snow guards; he did not discuss this idea with defendants.  In 2004, Mr. Abajian had the snow guard installer return to move the guards higher up the roof because he thought they had been installed too low.  Mrs. Abajian testified that the snow guards made the ice damming worse.

---

[2]  Plaintiffs concede that there are no material facts in dispute.  The only dispute is the timing of accrual of their claims.

[3]  TruexCullins denies that it included a metal roof in its design or recommended a metal roof.  This fact is not material for purposes of summary judgment.

[4]  Plaintiff John Abajian is retired from the medical profession and asked to be referred to as "Mr." for purposes of this case.

¶ 5.  During the winter of 2002-2003, water leaked through the roof and caused damage to the interior of plaintiffs' home. Plaintiffs' master bedroom and bathroom, office, dining room, living room, and kitchen were damaged. According to Mrs. Abajian, the walls "bubbled up, and everything peeled off." Although plaintiffs had experienced ice dams on the roof since the 1970s, the leaking was unprecedented, according to Mr. Abajian.[5] Plaintiffs filed an insurance claim to cover the cost of repainting.[6]

¶ 6.  Plaintiffs believed the damage they experienced in 2002 and 2003 was due to ice damming that resulted in water coming through the roof. Mr. Abajian believed that the water was penetrating the roof "because these seams weren't good enough." In the summer of 2003, Mr. Abajian had one of his sons apply caulking along the standing seams in an attempt to address what he thought was the source of the problem. Besides the leaking which resulted in the insurance claim, plaintiffs noticed leaks at least two other times between 2002 and 2012. Neither of these leaks required interior repairs.

¶ 7.  Within a few years after the metal roof was installed, rust spots began to appear on the roof's surface. Plaintiffs first noticed the rust spots in 2005. Mr. Abajian believed rust was eating through the galvanized metal from above, which struck him as unusual. He and his sons painted over the rust spots when they appeared, hoping that it would eliminate the problem. Mrs.

---

[5] Mrs. Abajian's testimony on this point was unclear. When asked by counsel whether the 2002 leaking event was the first time plaintiffs had leaking in the original portion of the house, she said "No. No. I can't remember. I am getting very confused." Later, she testified that there was leaking in a downstairs room and that "this happened before we had the new roof on; it was early." It is unclear whether she is referring to the new roof that was installed after the defect was discovered in 2014 or the roof that was installed in 2001. This testimony is too vague to create a genuine dispute of material fact. Even if plaintiffs did experience leaks with their old roof, a reasonable person would expect a brand-new roof to perform better—particularly since plaintiffs were allegedly told that the ice damming problem would improve with the metal roof.

[6] As the trial court noted, the record shows that the insurance claim was filed in February 2002, which suggests that the leaking began in the winter of 2001-2002, right after the new roof was installed, rather than the winter of 2002-2003 as Mr. Abajian testified.

Abajian was concerned about the rust spots on the roof panels because "[t]hey were disintegrating, I believe. Oxidizing." Plaintiffs painted over rust spots approximately every other year starting in 2005.

¶ 8. By 2005, Mr. Abajian understood that the metal roof was not performing consistent with his expectations. Mrs. Abajian knew in 2005 that the roof was "failing" because it was rusting.[7]

¶ 9. During the winter of 2012-2013, plaintiffs experienced major roof leaks that caused damage throughout the interior of the house. They hired a builder, Polli Construction, Inc., to investigate the cause. When Polli removed the roof panels in the summer of 2014, it found widespread rusting on the underside of the panels. Portions of the underlayment were also rotted. Polli opined that the corrosion was due to inadequate insulation.

¶ 10. On November 6, 2014, plaintiffs filed a complaint alleging negligence and breach of contract against defendants TruexCullins and TEC. TEC asserted a third-party claim against Murphy's. Following discovery, TruexCullins and TEC moved for summary judgment on the ground that the six-year statute of limitations applicable to civil actions barred plaintiffs' claims. The trial court granted the motion. It ruled that no reasonable jury could find that plaintiffs "were not on inquiry notice of some roof defect by 2005," and therefore plaintiffs' action was untimely.

¶ 11. We review summary judgment rulings de novo, using the same standard as the trial court. Gallipo v. City of Rutland, 2005 VT 83, ¶ 13, 178 Vt. 244, 882 A.2d 1177. We will affirm if, "viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."

---

[7] Mr. Abajian testified that he contacted TruexCullins and TEC to come look at the roof at some point between 2003 and 2008, "at a time when the ice damming was really bad," but it does not appear that anything came of this meeting. Neither party has argued that this meeting affected the running of the limitations period. If anything, it suggests that plaintiffs suspected a connection between the ice damming and the design or installation of the roof.

Glassford v. Dufresne & Assocs., P.C., 2015 VT 77, ¶ 10, 199 Vt. 422, 124 A.3d 822 (quotation omitted); V.R.C.P. 56(a).

¶ 12.   A civil action must "be commenced within six years after the cause of action accrues."  12 V.S.A. § 511.  A cause of action accrues upon "discovery of facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery."  Union Sch. Dist. No. 20 v. Lench, 134 Vt. 424, 427, 365 A.2d 508, 511 (1976) (quotation omitted); see also Univ. of Vt. v. W.R. Grace & Co., 152 Vt. 287, 290, 565 A.2d 1354, 1357 (1989) (holding that discovery rule applies to § 511).  At that point, the limitation period begins to run, "and the plaintiff is ultimately chargeable with notice of all the facts that could have been obtained by the exercise of reasonable diligence in prosecuting the inquiry."  Agency of Nat. Res. v. Towns, 168 Vt. 449, 452, 724 A.2d 1022, 1024 (1998) (quotation and alteration omitted).

¶ 13.   Plaintiffs contend that the issue of when their claims accrued was a question of fact that was for the jury rather than the trial court to decide.  They argue that they do not have any expertise in roofing design or construction and thus had no way of knowing that the roof was defective until Polli removed the roof panels in 2014 and discovered the corrosion underneath. According to plaintiffs, there was nothing to put them on inquiry notice regarding the condition of the roof until they experienced major leaks during the winter of 2012-13.

¶ 14.   Plaintiffs are correct that the determination of when a claim accrues is usually reserved for the trier of fact.  Towns, 168 Vt. at 454, 724 A.2d at 1025.  However, "it is appropriate for a court to determine the issue when there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party on that issue."  Turner v. Roman Catholic Diocese of Burlington, 2009 VT 101, ¶ 48, 186 Vt. 396, 987 A.2d 960.  This is such a case.

¶ 15.   The undisputed facts show that plaintiffs' brand-new roof began to leak almost immediately after it was installed, resulting in such extensive interior damage that they filed an

5

insurance claim to cover the cost of repainting. Plaintiffs had experienced ice damming before, but there is no evidence that the previous ice dams caused extensive leaking and interior water damage. They installed a metal roof in 2001-2002 with the hope that it would reduce ice damming. Plaintiffs recognized that the new roof had a problem because they attempted to address it by caulking the seams. However, they did not contact TruexCullins or TEC or anyone else to investigate the source of the problem. "New roofs do not leak; they do not require a period to 'settle' before they become watertight." Bernard Schoninger Shopping Ctrs., Ltd. v. J.P.S. Elastomerics, Corp., 102 F.3d 1173, 1179 (11th Cir. 1997). In Vermont, like anywhere else, a brand-new roof is expected to keep water out of the building it covers. A reasonable homeowner who had just paid to have his or her entire roof replaced would likely investigate the condition of the roof if he or she experienced significant, unprecedented leaking.

¶ 16.    Even if reasonable minds could differ as to whether the first leak was enough to put plaintiffs on notice of a roof defect, see A.J. Aberman, Inc. v. Funk Bldg. Corp., 420 A.2d 594, 601 (Pa. Super. Ct. 1980), we agree with the trial court that by 2005, plaintiffs were aware of facts sufficient to lead any reasonable homeowner to investigate the condition of the roof. At that point, they had already experienced a major, unprecedented leak that was severe enough for them to file an insurance claim. Rust spots had begun to appear. The ice damming problem, which the metal roof was supposed to mitigate, was worse than ever. Plaintiffs themselves stated that by 2005, the roof was not living up to their expectations and was "failing." They clearly recognized that the roof had problems because they attempted various repairs, including caulking the seams, installing snow guards, and painting the rust spots. There is no genuine dispute regarding these facts, which were sufficient to place a reasonable person on notice that something was wrong with the roof. At that point, it was up to plaintiffs to exercise due diligence and investigate the cause of the problem.

¶ 17.    We addressed a similar situation in Lench, 134 Vt. at 427, 365 A.2d at 511. After discovering that its new school building had a defective roof, a school district sued the architects

6

who designed the roof. The parties had entered into the design contract in 1965, and the design work was finished by January 1966. The building was completed and occupied by September 1966. The roof began to leak almost immediately. The school district attempted without success to address the problem on its own. It finally sought professional advice in January 1972, and learned that the roof was latently defective due to negligent design. It filed suit in December 1972.

¶ 18. We affirmed the trial court's grant of summary judgment to the defendants on the ground that the action was time-barred. Id. We rejected the plaintiff's argument that the statute of limitations did not begin to run until they discovered the precise cause of the injury in January 1972:

> [I]t is not the actual discovery of the reason for the injury which is the criteria. . . . [D]iscovery means discovery of facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery.

Id. at 427, 365 A.2d at 511 (quotation omitted). Although we declined to determine exactly when the statute began to run, we implicitly agreed with the defendants that the latest possible date triggering the limitations period was when the roof began to leak following occupancy in September 1966.

¶ 19. As in Lench, the question here is not when plaintiffs discovered the true nature of the roof defect, but when sufficient facts existed that would have led a reasonable person to begin the investigation that would lead to the discovery. In this case, that date was 2005 at the latest. Although plaintiffs did not yet understand the precise source of the problems by then, sufficient facts existed to put them on notice that something was wrong with the roof generally, requiring further investigation. "The plaintiff need not have an airtight case before the limitations period begins to run. Fleshing out the facts will occur during investigation of the matter or during discovery after the lawsuit is filed." Rodrigue v. VALCO Enters., Inc., 169 Vt. 539, 541, 726 A.2d 61, 63 (1999).

7

¶ 20.    Plaintiffs contend that the ice damming, the initial leak, and the rust spots that began to appear in 2005 were minor defects that were distinguishable from the extensive corrosion discovered in 2014 and that this creates a dispute of material fact regarding the date of accrual. We disagree.  Plaintiffs' claims against defendants are based on the allegedly defective roof. Although they may not have known the extent of the defect in the roof, it was apparent by 2005 that it was defective.  "The fact that further damage which plaintiff did not expect was discovered does not bring about a new cause of action, it merely aggravates the original injury."  Pembee Mfg. Corp. v. Cape Fear Const. Co., 329 S.E.2d 350, 354 (N.C. 1985) (affirming summary judgment where undisputed facts showed that plaintiffs were aware of defective roof but took no legal action until statute of limitations had run).

¶ 21.    The cases cited by plaintiffs to support their argument that the trial court should not have decided when their claims accrued are inapplicable here, as they involve either an incorrect application of law by a lower court or a genuine dispute as to when the plaintiffs became aware of damage that should have alerted them to problems with their roofs.  See Wildridge Venture v. Ranco Roofing, Inc., 971 P.2d 282, 283 (Colo. App. 1998) (holding that issue of whether knowledge of leaks in eight of forty-one buildings should have led plaintiff to investigate possible defects in remaining thirty-three buildings was one of fact); Habig v. Bruning, 613 N.E.2d 61, 63 (Ind. Ct. App. 1993) (reversing summary judgment where trial court failed to apply discovery rule and record showed genuine dispute regarding whether leaks around skylight were sufficient to put homeowners on notice regarding structural defects with addition as a whole); Birdsong v. Christians, 6 S.W.3d 218, 229 (Mo. Ct. App. 1999) (finding genuine dispute as to when homeowners noticed damage that would have led them to discover defects in house, "particularly latent defects such as wet rot, slow leaking beneath the surface of the roof or located within difficult to access walls, and structural repairs made to the roof"); State v. Holland Plastics Co., 331 N.W.2d 320, 325 (Wis. 1983) (reversing summary judgment where trial court applied wrong statute of

8

limitations and did not consider discovery rule); Kohl v. F.J.A. Christiansen Roofing Co., 289 N.W.2d 329, 335 (Wis. Ct. App. 1980) (finding genuine dispute about whether damage to 12,000 square feet of 300,000 square foot roof was significant enough to alert owner to problem, where owner denied knowing about damage to roof caused by wind and denied that he or agent read report that would have made him aware of problem). Here, the trial court properly applied the discovery rule, and there is no dispute that plaintiffs noticed problems with the roof as a whole by 2005.

¶ 22. Courts have not hesitated to grant summary judgment where the undisputed facts show that plaintiffs were aware of sufficient facts to put them on inquiry notice of a roof defect, even if they did not yet understand the full extent of the problem. See, e.g., Pembee Mfg. Corp., 329 S.E.2d at 354; see also John Q. Hammons Hotels, Inc. v. Acorn Window Sys., Inc., 394 F.3d 607, 611 (8th Cir. 2005) (affirming summary judgment because no reasonable jury could find that owner's knowledge of water intrusion through windows, combined with repairs to windows, were insufficient to put owners on inquiry notice of defect in windows); Town of Mansfield v. GAF Corp., 364 N.E.2d 1292, 1295 (Mass. Ct. App. 1977) ("In this case there is no dispute that the plaintiff learned that the roof was defective no later than November or December of 1969. The fact that it did not appreciate the extent of the damage until later is immaterial."); Day Masonry v. Indep. Sch. Dist. 347, 781 N.W.2d 321, 333-34 (Minn. 2010) (affirming summary judgment for defendant contractor under Minnesota's two-year statute of limitations where there was no dispute that plaintiff had knowledge of roof leaks more than two years before it filed its arbitration demand, even if plaintiff did not know full extent of injury by then); A.J. Aberman, Inc., 420 A.2d at 601 (affirming summary judgment that mall owners' December 1973 action against contractor for failure to properly install roof was barred by Pennsylvania's six-year statute of limitations, where undisputed facts showed that mall owners experienced leaks in multiple locations since roof was installed in 1965, putting them on notice of defect well before December 1967).

9

¶ 23. In this case, there is no dispute regarding what material facts plaintiffs knew in 2005. These facts were sufficient as a matter of law for plaintiffs' claims against defendants to accrue at that time. Therefore, the trial court did not err by deciding the issue. See Rodrigue, 169 Vt. at 541, 726 A.2d at 63. The court was correct that the statute of limitations had run before this action was filed.

Affirmed.

FOR THE COURT:

_____

Associate Justice